## MARTHA E. BRADLEY, Respondent, v. MODERN WOODMEN OF AMERICA, Appellant.

### St. Louis Court of Appeals, January 4, 1910.

1. **DEATH: Life Insurance: Instructions: Assumption of Facts.** In an action on a death benefit certificate, where insured had been absent from his home and unheard of for seven years, but it was not conclusively proven he was dead, an instruction which assumed this essential fact was erroneous.

2. ————: ————: **Presumption: Seven Years' Absence: Statute: Evidence.** A presumption of death, under Section 3144, R. S. 1899, arises only where it is conceded, or conclusively shown, the person had left the state and had not returned for seven successive years.

3. ————: ————: ————: ————: **Common Law Presumption: Diligence: Evidence Held Sufficient.** Evidence that the wife and relatives of insured sought information from all possible sources after his disappearance, that he was advertised for in his lodge journal, which circulated in more than one thousand lodges throughout the country, and that the secretary of his lodge wrote more than fifty letters of inquiry, shows the exercise of sufficient diligence to discover what had become of him to give rise to the presumption of death after the lapse of seven years.

4. ————: ————: ————: ————: ————. Where a person left his home avowedly for a temporary purpose and with the intention to return, and he had no motive, which, according to human nature and experience, would induce him to leave permanently, and he had not returned nor been heard of, after the lapse of seven years, by his family, other kin, or acquaintances, a presumption of his death comes into operation, at least if reasonable, but fruitless, inquiry for him has been made by those interested in him.

Bradley v. Modern Woodmen.

5. ——: ——: ——: ——: ——: **Rebuttable Presumption.** The presumption of death from seven years' absence of a person may be rebutted by evidence of his unhappy domestic relations.

6. ——: ——: ——: ——: ——: **Evidence: Cause for Absence.** In an action on a death benefit certificate, where insured had been absent from his home and unheard of for seven years, evidence that he had declared, five or six months before his departure, that he had endured his family troubles as long as he could, should have been admitted, as tending to dispel the presumption of death arising from his absence.

7. ——: ——: ——: ——: ——: **Time of Death.** There is no presumption regarding the date when a person died, who has been absent and unheard of for seven years, nor whether he died at the end of, or during, this period.

8. ——: ——: ——: ——: ——: ——: **Unusual Peril of Absentee not Necessary.** The jury might infer the death of the missing person had occurred before seven years had expired, although he was not threatened by any danger which reasonably might be supposed to have caused his death.

9. ——: ——: ——: ——: ——: ——: **Sufficiency of Evidence: Facts Stated.** In an action on a death benefit certificate, it was shown insured left his home on an errand similar to others he had gone on before and in the prosecution of a business he was pursuing at the time; that he was free from debt, a moral man, a church member, a good provider and an industrious citizen; that he kissed his wife when he departed and told her he would be back in a few days; that from the time of his departure, more than seven years before suit, there was no authentic evidence of his having been seen alive, or his wagon and team having been found, though diligent efforts were made to obtain information. *Held,* these facts were sufficient to warrant the submission of the question whether insured died prior to the first default in an assessment on his certificate—two or three months after his disappearance.

10. ——: ——: ——: ——: ——: ——: **Burden of Proof.** In such a case, the burden is on plaintiff to establish by the weight of evidence that insured died prior to the lapse of the policy for non-payment of assessments.

11. ——: ——: ——: ——: ——: ——: **Instructions.** In such a case, it is better to say nothing about "probabilities" in the instructions; and in determining the question whether the death of insured occurred prior to the lapse of the policy, the jury should take into consideration his condition in life,

Bradley v. Modern Woodmen.

character, habits and domestic relations, the circumstances attending his departure from home, and the fact that none of his friends, relatives or acquaintances had heard of him since.

12. ———: ———: ———: ———: ———: Evidence: Declarations of Absentee. In such action, evidence of declarations by insured when he left home, of the purpose of his trip, and when he would return, was admissible as bearing on the presumption of death from absence.

13. ———: ———: ———: ———: ———: ———: Hearsay Evidence: Rumors. Evidence of rumors in the vicinity of the home of a person who has not been heard from for more than seven years, as to the cause of his leaving home, is hearsay, and inadmissible as bearing on the presumption of death from absence.

14. ———: ———: ———: ———: ———: Pleading: Allegation of Death. Where the action on a benefit certificate is based on the presumption of insured's death from his absence for more than seven years, the petition should allege that death occurred before the date of the lapse of the policy.

Appeal from Knox Circuit Court.—*Hon. Chas. D. Stewart,* Judge.

REVERSED AND REMANDED.

*Benj. D. Smith, Chas. K. Hart* and *F. H. McCullough* for appellant.

(1) A state once shown to have existed is presumed to continue, so that after proof of existence, there is a presumption of the continuance of life. Hancock v. Insurance Co., 62 Mo. 26; Greenleaf on Evidence, sec. 41; 19 Am. and Eng. Ency. Law, p. 74; In re Hall, 1 Wall J. R. 85. (2) Absence for seven years is not alone sufficient to raise presumption of death; it must also be made to appear that the person has not been heard from. Modern Woodmen of America v. Graber, 128 Ill. App. 585; Brown v. Jewett, 18 N. H. 230; In re Hall, 1 Wall. J. R. 85; Commonwealth v. Thompson, 11 Allen 25; Insurance Co. v. Edmund, 2 App. Cas. 487; Modern Woodmen of America v. Gerdom, 82 Pac. Rep.

(Kan.) 1100; Hitz v. Ahlgren, 170 Ill. 60; Litchfield v. Keagy, 78 Ill. App. 398. (3) The burden of establishing the presumption of death is upon the plaintiff who makes the assertion that a person is dead and has not been heard from for more than seven years, and before a court is justified in presuming the death of a person, because of his absence, all reasonable doubt of his being alive at a given period ought to be removed. Smith v. Combs, 24 Atl. 9; Wilson v. Hodges, 2 East 313; Duke of Cumberland v. Graves, 9 Barb. 608; Modern Woodmen of America v. Gerdom, 82 Pac. Rep. (Kan.) 1100; Garwood v. Hasings, 38 Cal. 229. (4) Considering the great length and breadth of this country, and the migratory character of the people, the presumption of death has less force than in the country where the law on the subject originated. Smith v. Smith, 49 Ala. 156. (5) The obligation is always upon the person who is to derive the benefit from the death of the absentee to exclude, by the best evidence, and with as much certainty as possible, reasonable belief that he continues to live. Modern Woodmen of America v. Gerdom, 82 Pac. Rep. (Kan.) 1100. (6) It is not enough that a person is absent and unheard of for a period of seven years, but the presumption can only arise after diligent inquiry of persons and at places where news of him, if living, might likely be obtained and without gaining information concerning him. Renard v. Bennett, 76 Kan. 848, 93 Pac. Rep. 261; Modern Woodmen of America v. Gerdom, 82 Pac. Rep. (Kan.) 1100. (7) The social aspects of our civilization have been almost revolutionized since the presumption, based upon the fact of seven years unexplained absence, was adopted. This being true, the presumption of death from absence cannot have the strong probability of fact as its basis which formerly supported it, and persons who, for their own profit, assume the burden of establishing in courts of justice that the death of an individual has occurred, have little excuse for urging their own isolated igno-

rance of his fate or his whereabouts as the principal item of their proof. Modern Woodmen of America v. Gerdom, 82 Pac. Rep. (Kan.) 1100. (8) A party relying upon the presumption of death, arising from an absence for a period of seven years without being heard from, after diligent inquiry, must show that he has followed up all clues and information received by him concerning the whereabouts of the person since his disappearance. Board of Education in re Boerum, 173 N. Y. 321, 66 N. E. Rep. 11; McCartee v. Camel, 1 Barb. Ch. 455; Modern Woodmen of America v. Gerdom, 82 Pac. Rep. (Kan.) 1100. (9) Hearsay evidence is competent in cases of this kind. Modern Woodmen of America v. Graber, 128 Ill. App. 585; Modern Woodmen of America v. Gerdom, 82 Pac. Rep. (Kan.) 1100; Dowd v. Watson, 105 N. C. 476, 11 S. E. 589. (10) The legal presumption of death of a person from his unexplained absence from home for seven years is a disputable one and may be rebutted by any circumstances connected with his disappearance or failure to return, which satisfies the jury that he is still living. Dickens v. Miller, 12 Mo. App. 108; Winter v. K. of P., 96 Mo. App. 2, 69 S. W. 662. (11) There is no presumption as to the time a person, absent and unheard of for seven years, died. The presumption arises only when the term of seven years is complete. Hancock v. Insurance Co., 62 Mo. 30; Lancaster v. Insurance Co., 62 Mo. 121; Dean v. Bittner, 77 Mo. 101; Winter v. K. of P., supra; see authorities cited in note on p. 704, 92 Am. Dec. (12) If it be important to anyone to establish the precise time of such person's death, he must do so by evidence of some sort to be laid before the jury for that purpose, beyond the mere lapse of seven years. Special facts and circumstances should be shown, reasonably conducing to that end. The evidence need not be direct or positive; it may depend upon circumstances, but it should be of such a character as to make it more probable that the person died

at a particular time than that he survived. Hancock v. Insurance Co., 62 Mo. 26; Tisdale v. Insurance Co., 26 Ia. 170. (13) The court erred in instructing the jury that all questions were eliminated from the case except the question as to the date of Mills' death, and instructing the jury that Mills was dead at all. Winter v. K. of P., 96 Mo. App. 2, 69 S. W. 662. (14) It was error to instruct the jury that the plaintiff was "required merely to furnish proof which tended to show that fact (the death of Mills, prior to February, 1901), and to make it appear to the jury more probable or credible than otherwise." The burden of proof and quantum of evidence to establish any fact in a civil case, is greater than this. The instruction is also erroneous in that it presumes the fact of Mills' death either before or after February, 1901. Winter v. K. of P., supra.

*F. E. Robinson* and *E. R. McKee* for respondent.

(1) Where one studious in habits, attentive to business, with a fixed and permanent residence and pleasant domestic relations, suddenly disappears, these facts may warrant a jury in finding his death at the time. Hancock, Admr., v. Insurance Co., 62 Mo. 26. (2) Absence from the State for seven years in succession will raise a presumption of death in the absence of evidence to the contrary. Wheelock v. Overshiner, 110 Mo. 100; Dickens v. Miller, 12 Mo. App. 408; R. S. 1899, sec. 3144. There was no evidence introduced by defendant, nor effort made at the trial to prove he was alive during the seven years, or that he was then alive, therefore the case being within the terms of the statute, and the fact of death being established by the legal presumption, and no proof offered whatever that he was alive during that time, not being shown that he was alive, the fact of his death could be withdrawn from the jury and leave the only fact to find the date of his death within the seven years. Biegler v. Legion of

146 App.—28

Honor, 57 Mo. App. 419. (3) A party relying upon the presumption of death arising from an absence for a period of seven years without being heard from, need only show that reasonable search has been made immediately after disappearance. Biegler v. Legion of Honor, 57 Mo. App. 422. Death may be presumed from an unexplained absence for a shorter period than seven years if the circumstances attending the absence were such as to make the duration of life improbable. Dickens v. Miller, 12 Mo. App. 414; Lancaster v. Insurance Co., 62 Mo. 121; Hancock v. Insurance Co., 62 Mo. 26. (4) Plaintiff was not required to establish beyond a reasonable doubt the fact of the death of the insured prior to January 1, 1901, when the next assessment became due, after disappearance. She was required merely to furnish proof which tended to show that fact and to make it appear to the jury more probable than otherwise. Lancaster v. Insurance Co., 62 Mo. 121; Winter v. K. of P., 96 Mo. App. 1; Davis v. Briggs, 97 W. S. 628; Rhodes v. Rhodes, 36 Ch. Div. 586; Insurance Co. v. Stevens, 71 Fed. 258; Garden v. Garden, 2 Houst. 574; Hamilton v. Rathbone, 9 D. C. App. 48; Schaub v. Griffin, 84 Md. 557; Cox v. Ellsworth, 18 Neb. 664. (5) The rule now is general that a person shown not to have been heard of for seven years by those (if any) who, if he had been alive, would naturally have heard of him, is presumed to be dead, unless the circumstances of the case are such as to account for his not being heard of without assuming his death. Flood v. Growney, 126 Mo. 264.

Plaintiff, who is the wife of a man named Bradley, was formerly the wife of Abe Mills. She sues on a benefit certificate issued June 27, 1899, to Mills by defendant, by which it agreed to pay plaintiff the sum of one thousand dollars on the death of said Mills, if he then was in good standing with all dues and assessments discharged on his certificate. Mills' family

consisted of his wife and several children, with whom he lived on and prior to October 27, 1900, near Locust Hill, in Knox county, Missouri. He was a farmer, but did odd work for other persons at times. His circumstances were rather poor, not much property having been accumulated by him, and on the date last mentioned he owned a wagon and team and fifty or sixty dollars in money; also some other property of trivial value. On that day he left his home with his wagon and team, professedly to go to Canton, in Lewis county, to purchase a load of fish which he intended to bring home and sell to persons in the vicinity. From the time he left home, or at least after he reached Canton, no tidings of him were ever received, as far as the evidence shows. After waiting until more than seven years after his disappearance, and on April 29, 1908, the petition in the present action was filed by plaintiff to recover the indemnity the benefit certificate promised she should be paid at her former husband's death in good standing. The petition speaks in several places of the death of Mills, but nowhere formally avers he had died or was dead, or the time and place of his death. It alleges the facts regarding his departure from home to go to Canton for the purpose stated, says no trace or information pertaining to him had since been obtained by his family, acquaintances or friends, though diligent search and inquiry had been made through all sources and by all possible means; says further his family relations and surroundings were pleasant at the time he left home; he had no business complications to oppress or annoy him, and there was no cause why he should not return home or give information as to his whereabouts if he continued to live. In its answer defendant admitted issuing the benefit certificate and denied the other averments of the petition; then alleged Mills had become suspended on February 2, 1901, and all rights under the certificate forfeited, for the nonpayment of a benefit assessment duly levied and payable by him on or before

the first day of February, 1901; alleged Mills had abandoned his membership in the society on February 1, 1901, and never, after that date, had attempted to be reinstated in the manner required by the by-laws; that during the seven years since his disappearance, nearly seventy assessments had been levied against the members of the society, and he had not paid, tendered or in any manner attempted to pay any of said assessments, or any dues which would have accrued on his certificate during the seven years, had he continued a member. In the replication plaintiff admitted the assessment for the year 1901 had been levied by the society and had not been paid by Mills or any one for him, but denied the benefit certificate had become null or forfeited on account of nonpayment of the assessment or for any other reason, inasmuch as the insured had died prior to the date, February 1, 1901, when the assessment fell due. Many of the facts of the case were stipulated by the parties. It was agreed defendant is a fraternal beneficial society, organized under the laws of Illinois and now authorized to do business in the State of Missouri; what the by-laws of the company are, and that one of them forfeited, *ipso facto,* and rendered null and void a certificate, if an assessment was not paid when due; that on December, 1900, assessment No. 1, for the year 1901, for the benefit fund of defendant, was levied on all members, including Abe Mills; regular notice of the levy was furnished to him (*i. e.,* constructive notice as provided in the by-laws), and neither said Mills, nor any one for him, had paid said assessment; that more than seventy assessments had been levied by the board of directors against beneficial members of the order during the seven years succeeding October 27, 1901, and neither Mills, nor any one for him, had tendered or offered to pay any of said assessments after January, 1901, or to pay any dues as required by the by-laws of defendant; that Mills had paid all dues and assessments levied against him subsequent to the date

of the benefit certificate and until January 1, 1901. Plaintiff, in March, 1908, furnished proof to defendant of his death.

Defendant objected to evidence being received on the ground the petition stated no case, did not say or state facts to advise defendant of the date of Mills' death, and did not show whether plaintiff was proceeding under the statute or under the common law presumption in respect of his death. Oral testimony was introduced tending to prove the disappearance of Mills as stated; that he was then thirty-six years old, had been married eighteen years and had three young children; he was a farmer but owned no farm, had not thrived financially, was working at what he could get to do and had been accustomed to go to Canton to get fish to peddle; had no trouble with his family, kissed his wife good-bye on leaving her and said he would be back in three or four days if it did not rain, and if it did would be gone longer; that Mill's character was good; he supported his family and was affectionate with them; had made several other trips from home, one to Oklahoma and one to Dakota, but during these absences his family had heard from him regularly; had talked of enlisting in the army; took his money, sixty or seventy dollars, with him and the wagon and team, and horse feed. After he left, his wife paid his dues to defendant order for November and December. There is some testimony that in the spring prior to his disappearance, Mills had had a disagreement with his wife and declared he could not stand it at home any longer; that his wife did not keep the house clean and make the children mind, but would allow them to tear things up and do as they pleased; that these statements were made in his wife's presence and she said she "wished he had a woman." His relatives had endeavored to find him or learn of his whereabouts and had failed. One witness testified to a hearsay statement that a man of Mills' description about the time he disappeared, tried to buy, but could

not get, any fish in Canton, and "crossed the river." Defendant endeavored to prove by witnesses that rumors were afloat in the community where Mills lived about the cause of his disappearance, and excepted to the exclusion of the testimony. Defendant also makes a point about the efforts put forth to find a trace of him having been inadequate to base a presumption of death on. His wife and many of his relatives sought information from all probable sources, and he had been advertised for in a journal of the defendant society which circulated throughout the United States in more than a thousand lodges; the secretary of his lodge had written fifty or more letters of inquiry about him, and various neighbors and relatives testified they had never seen nor heard of him after his disappearance.

The court refused to direct a verdict for defendant, and ruled as follows on the other requests:

At the request of plaintiff the court gave the following instructions:

1. "The court instructs the jury that all questions are eliminated from this case, except the question of date of his death, of the said Abe Mills. If, therefore, you find from the greater weight of the evidence that it is more probable that he died prior to February, 1901, than after that date, then you will find for the plaintiff.

2. "The court instructs the jury that the plaintiff in this case is not required to establish beyond a reasonable doubt the death of the insured prior to February, 1901. She is required merely to furnish proof which tended to show that fact, and to make it appear to the jury more probable or credible than otherwise. If, therefore, you find and believe from the evidence in the cause that plaintiff has done this, your verdict should be for the plaintiff."

Defendant objected to the action of the court in giving said instructions; the objection was overruled and exception saved.

At the request of defendant the court instructed as follows:

1. "The court instructs the jury, that although the sudden disappearance and unexplained absence from his home in this State without being heard from, of said Abe Mills, for the period of seven years, raised the legal presumption of his death, yet that presumption cannot arise until the end of the seven-year period from the date of his departure, and that there is also a presumption of continued life in this case which the plaintiff must overcome with the presumption of death of said Mills, prior to February 2, 1901, and unless the plaintiff has shown by the greater weight of the evidence facts and circumstances surrounding the disappearance of said Abe Mills, which make it more probable that he died prior to said February 2, 1901, than that he did not die prior to said last named date, then your verdict must be for defendant.

2. "The court instructs the jury that before you can find for the plaintiff in this case, you must find and believe, from the greater weight of the evidence, that said Mills died before the second day of February, 1901, and unless you so find, your verdict must be for the defendant."

The following instruction was requested by defendant and refused, and defendant excepted:

"The court instructs the jury that the mere fact that said Abe Mills disappeared from his home before February 2, 1901, and has been absent and unheard from for more than seven years, if you find from the greater weight of the evidence that he did so disappear and has not been heard from, is not sufficient to warrant you in finding that said Abe Mills died before said date, February 2, 1901, and unless you believe, from the greater weight of the evidence, that said Abe Mills encountered some danger or peril, before said last named date, which would make it more probable that said Abe Mills died before said date than that he did not so die, then your verdict must be for the defendant."

The jury returned a verdict for plaintiff for one thousand dollars and defendant appealed.

We have this statute:

"If any person who shall have resided in this State go from and do not return to this State for seven successive years, he shall be presumed to be dead in any case wherein his death shall come in question, unless proof be made that he was alive within that time." Revised Statutes 1899, sec. 3144.

GOODE, J. (after stating the facts).—1. The main errors assigned in this case are upon the rulings on requests for instructions, and in support of these rulings plaintiff's counsel invoke both the presumption enacted in the statute quoted in the statement (Revised Statutes 1899, sec. 3144), and also the common law presumption of the death of a person who has not been heard of after an absence of seven years from his home. Nothing was said in the instructions for plaintiff about presumptions, and whatever clouding of the true issue in the minds of the jury may have resulted from mentioning them, was due to defendant's requests, which referred to the presumption of death after seven years of unexplained absence. But the court must have relied on a presumption in instructing upon plaintiff's request, that all questions were eliminated from the case except as to the date of the death of the insured, for it was not conclusively proved he was dead. This essential fact was taken for granted in the instructions and erroneously, even if either the statutory or the common law presumption was relevant to the case. The statutory presumption could only arise if it was conceded, or conclusively shown, Mills had left the State, and had not returned for seven successive years. It was denied he had left it and the evidence on the point was a vague and inconclusive hearsay statement, which, if competent because not objected to, would be for the triers of the fact to weigh in passing on the issue of whether he had

left the State; but no issue of the kind was submitted, and if the statutory presumption of death was relied on, it was applied arbitrarily and without finding the essential fact on which its relevancy depended.

The first instruction for plaintiff misapplied, if it counted on, the common law presumption for the reason to be stated infra. We reject the argument based on the supposed inadequacy of the search made for the insured, against plaintiff's right to rely on the presumption, if it had been applicable. Testimony was given tending to prove enough diligence was exercised to discover his whereabouts or what had become of him, to satisfy the law, even if we accept as sound recent decisions which hold the presumption only arises when due efforts have been made to learn the fate of the missing person. [Hitts v. Ahlgren, 170 Ill. .60; Modern Woodmen v. Graber, 128 Ill. App. 585; Modern Woodmen v. Gerdom, 82 Pac. (Kans.) 1100, 2 L. R. A. ( N. S.) 809; Prudential Assur. Co. v. Edmunds, 2 App. Cas. 487; Bailey v. Bailey, 36 Mich. 185; Stichfield v. Emerson, 52 Maine 465.] The insured left home avowedly for a temporary purpose and with the intention to return; there was much evidence to show he had no motive which, according to human nature and experience, would induce him to leave permanently, and he had not returned or been heard of after a lapse of seven years, by his family, other kin, or acquaintances. These circumstances bring the presumption of death into operation when it is relevant; at least if reasonable but fruitless inquiry for the absentee has been made by those interested in him. [Biegler v. Supreme Lodge, 57 Mo. App. 419, 423; Lawson, Presumptive Evidence, Rule 44, p. 364; 29 Albany Law Journal, pp. 436, 464.]

But there was testimony in the record which ought to have been submitted to the jury as tending to dispel the presumption. A witness said the insured declared five or six months before his departure, that he had endured his family troubles as long as he could; and if

this testimony was true, it conduced to prove the thought was in his mind to abandon home and family, and later his discontent may have induced him to leave home ostensibly for a temporary purpose, but with a secret resolve not to return. According to the cases most favorable to plaintiff's cause, the court, with this evidence before the jury, should not have eliminated from their inquiry all issues except the date of the death of the insured, but should have left to them the task of finding whether or not he was dead. That is to say, the presumption of death indulged because of his long absence from home and lack of information about him, was rebuttable, and this evidence of unhappy domestic relations tended to rebut it; for such infelicity occasionally induces a husband and father to desert his family. [Dickens v. Miller, 12 Mo. App. 408; Carpenter v. Sup. Council, 79 Mo. App. 597; Winter v. Sup. Lodge, 96 Mo. App. 1; Biegler v. Sup. Council, supra; Modern Woodmen v. Graber, 128 Ill. App. 585, 588; Garwood v. Hastings, 38 Cal. 216, 229; Bowden v. Henderson, 2 Smal. & G. 360; Lawson, Presumptive Evidence, Rule 53, p. 294; Greenleaf, Evidence, sec. 278f.]

2. But the essential fact to be established by plaintiff and found by the jury was that Mills had died prior to February 2, 1901. The action was not filed until after more than seven years of unexplained absence; but it stands as to the task of making out a case for recovery, as though it had been begun at any time after the date mentioned. The aid plaintiff derives from the seven years of absence and lack of information, is not by way of presumption at the end of said period that her husband is dead, which would be the all-important fact if her case depended solely on his death having occurred before the suit was filed. But as the case stands, it does not help her at all, inasmuch as recovery depends on his being dead within about two months after he left home. What help plaintiff gets from his protracted absence without having been heard of, is due to the tenden-

cy of those two facts to prove he was dead within the two months previous to the default in payment of an assessment; that is, before February 2, 1901. On this point a court of the highest authority said, in an action where the date of death was the vital fact:

"Mr. Taylor in the first volume of his Treatise on the Law of Evidence (sect. 157) says that 'although a person who has not been heard of for seven years is presumed to be dead, the law raises no presumption as to the time of his death; *and therefore, if any one has to establish the precise period during those seven years at which such person died, he must do so by evidence, and can neither rely, on the one hand, on the presumption of death, nor, on the other, upon the presumption of the continuance of life.*' These views are in harmony with the settled law of the English courts. In Re Phene's Trust, Law Rep. 5 Ch. 138; Hopewell v. De Pinna, 2 Camp. N. P. 113; Reg. v. Lumley, Law Rep. I. C. C. 196; Re Lewes' Trusts, Law Rep. 11 Eq. 236; 32 Law J. Ch. 104; 40 Id. 507; 29 Id. 286; 37 Id. 265. In the leading case in the Court of Exchequer of Nepean v. Doe, dem. Knight (2 Mec. & W. 894), in error from the Court of King's Bench, Lord Denman, C. J., said: 'We adopt the doctrine of the Court of King's Bench, that the presumption of law relates only to the fact of death, and that the time of death, whenever it is material, must be a subject of distinct proof.' To the same effect are Mr. Greenleaf and the preponderance of authority in this country. [1 Greenl. Evid., sec. 41; Montgomery v. Bevans, 1 Sawyer, 653; Stevens v. Mc-Namara, 36 Mo. 176; Smith v. Knowlton, 11 N. H. 191; Flynn v. Coffee, 12 Allen (Mass.) 133; Luing v. Steinman, 1 Metc. (Mass.) 204; McDowell v. Simpson, 1 Houst. (Del.) 467; Whiting v. Nicholl, 46 Ill. 230; Spurr v. Trumble, 1 A. K. Mar. (Ky.) 278; Doe ex dem. Cofer v. Flanagan, 1 Ga. 538; Smith v. Smith, 49 Ala. 156; Primm v. Stewart, 7 Tex. 178; Gibbs v. Vincent, 11 Rich. (S. C.) 323; Hancock v. Am. Life Ins.

Co., 62 Mo. 26, 121; Stouvenal v. Sophins, 2 Daly (N. Y.), 310; McCartee v. Camee, 1 Barb. (N. Y.), Ch. 456." (Emphasis ours.)   Davis v. Briggs, 97 U. S. 628, 634.]

The courts of this State hold there is no presumption regarding the date when a person died who has been absent and unheard of for seven years, nor as to whether he died at the end of that period, or during it. [Hancock, Admr., v. Ins. Co., 62 Mo. 6; Winter v. Lodge, supra.]   In the first of these cases it was important, as it is here, to show the death of the insured happened prior to a day, when, if he was alive, the policy lapsed for non-payment of a premium.   This day fell about three months after the insured disappeared, or a month longer than in the case at bar, and in both cases early in the seven-years period.   Among other things the Supreme Court said:

"Whoever finds it important to establish death at any particular period, must do so by some kind of evidence.   The evidence need not be direct or positive; it may depend upon circumstances, but it should be of such a character as to make it more probable that the person died at a particular time, than that he survived.   When a person is known to be alive at a certain time, there is a presumption of the continuance of his life, and to overcome this presumption, evidence must be adduced tending to show at what particular period he died.   Mere absence, unattended with other circumstances, will not be sufficient.   In Eagle's case (3 Abb. Pa. 218), it was said that, if it was attempted to apply the presumption short of seven years, special circumstances would necessarily have to be proved; as for example, that at the last accounts the person was dangerously ill, or in a weak state of health, was exposed to great perils of disease or accident; that he embarked on board of a vessel which has not since been heard from, though the length of the usual voyage has long since elapsed.   In all such cases, if the circumstances known are sufficient to

authorize the conclusion, the decease may be placed at a time short of seven years." (62 Mo. 1. c. 32.)

The rule invoked at this point partakes of the character of what Professor Thayer denominates presumptive evidence, rather than of the character of a rebuttable legal presumption, like that of death at the end of seven years' absence. (Thayer, Evidence, Appendix A.) The learned author shows the presumption of death belongs to the class of rebuttable, as distinguished from conclusive, legal presumptions. (1 C. 541, *et seq.*) He says presumptions of the rebuttable kind "are certain assumptions, or legal rules, defining the amount of evidence requisite to support a particular allegation; which facts being proved, may be either explained away or rebutted by evidence to the contrary, but are conclusive in the absence of such evidence; . . . are definitions of the quantity of evidence, or the state of facts, sufficient to make out a prima-facie case; in other words, of the circumstances under which the burden of proof lies on the opposite party." Further on in this connection it is said: "It should be carefully remarked that in both kinds of legal presumption (meaning the conclusive and the rebuttable) there is no *inference*; the rule of law merely applies or attaches to the circumstances when proved and is not *deduced* from them" (1. c. 545). The author then proceeds to discriminate both classes of legal presumptions from presumptive evidence, or that rule of law which permits a jury to infer the fact in issue from indirect, instead of direct, evidence of its occurrence; as "where a person was found standing over a wounded man with a bloody sword in his hand, there is a presumption (or it may be probably inferred) that the one stabbed the other."

The argument for defendant counts on the supposed lack of evidence conducing to prove the insured died even before the expiration of seven years after his departure from home, and the greater lack of proof that he died previous to the second day of February, 1901, as

the instruction required. The insured was not afflicted with any disease, was not shown to have been exposed to unusual peril, to have meditated upon suicide, or to have been in a despondent mood which might have led to that act. Conditions such as these affecting a person who disappears unaccountably were regarded in the older cases as prerequisites of the inference of death when the absence had not lasted the full period, and perhaps in most jurisdictions the inference of earlier death would not be allowed now, except on proof of similar facts. But the law in this State is more liberal to parties with demands dependent on a finding of earlier death. Our Supreme Court has adopted the doctrine of Tisdale v. Ins. Co., 26 Ia. 170, wherein the Supreme Court of Iowa held the jury might infer the death of the missing person had occurred before seven years had expired, even though he was not threatened by any of the dangers mentioned, supra; and that the conclusion of death at an earlier period could be drawn upon proof of any facts, which, according to common experience, made it probable the party, if alive, would have communicated with his friends. After postulating the facts in evidence, the Supreme Court of Iowa said:

"Must seven years pass, or must it be shown that he was last seen or heard of in peril, before his death can be presumed? No greater wrong could be done to the character of a man than to account for his absence, even after the lapse of a few short months, upon the ground of wanton abandonment of his family and friends. He could have lived a good and useful life to but little purpose, if those who knew him could even entertain such a suspicion. The reasons that the evidence above mentioned raises a presumption of death, are obvious; absence from any other cause, being without motive and inconsistent with the very nature of the person, is improbable."

According to these views an instruction was declared wrong which said it must appear, in order to

prove death prior to the lapse of seven years, the person alleged to be dead was subject to some specific peril which reasonably might be supposed to have caused his death; and our Supreme Court adopted the reasoning in the Hancock case, "that evidence of character, habits, domestic relations, and the like, making the abandonment of home and family improbable, and showing a want of all those motives which can be supposed to influence men to such acts, may be sufficient to raise the presumption of death, or from which the death of one absent and unheard of, may be inferred, without regard to the duration of such absence." [62 Mo. l. c. 34.] In Lancaster v. Ins. Co., 62 Mo. 121, 128, the Supreme Court of Missouri reiterated its concurrence in the Iowa doctrine and rejected the rule that, for the conclusion of death to be indulged before seven years have expired, there must be proof the absentee was exposed to some peril apt to shorten his life. The question is whether the principle of those authorities, and others which might be cited, would permit the jury to find, on the facts, in the present record, the death of the insured occurred earlier than February 2, 1901. This question can be answered best by comparing the facts of the case at bar with the facts of cases wherein the same problem was solved one way or the other. In Hancock v. Ins. Co., it was held that there was no room for presumption of death before seven years had run, for these reasons: "Morris, the insured person, had no family; he had no fixed and permanent place of abode. For years he had been residing in the South, being in different states and engaged in different places. He told his relatives that he was going back to the South. He made arrangements to introduce a patent there. He was warm in his sympathies for the Southern cause, and expressed his determination to take arms in its defense. No intention was ever shown of staying in New York, or with his friends in the North. According to his declared design, he was going South, as thousands of others did in those

times." In Lancaster v. Ins. Co., the facts indicated death by drowning, as the insured was sick and weak while on a ship and was not seen to leave it when it reached port. In Winter v. Supreme Lodge, the insured had talked of making way with himself, and circumstances pointed to the conclusion that he had done so. The same was true in Carpenter v. Supreme Council, 79 Mo. App. 597. The last three cases are not a guide in this case, for in them the missing parties were in great peril; but the Tisdale case is a guide and a controlling precedent. Without reflecting at all on the credibility of the witness who testified regarding the quarrel between Mills and his wife and his threat to leave home, it is obvious the jury were not bound to believe this testimony; or, if they believed it, might not believe Mills carried out his threat; and especially is this so because there is much other evidence tending to prove the insured was happy in his domestic relations, strongly attached to his wife and children and without any motive to abandon them. His departure from home was several months after the date of the supposed quarrel, and there was no testimony of any family discord meanwhile. He left on an errand similar to others he had gone on before, and in the prosecution of a business he was pursuing at the time. He was not dejected in spirits; though in humble circumstances, was free from debt and was getting along apparently as well as usual; he declared he would be back in a few days, kissed his wife when he departed and apparently left no feeling in her mind of doubt about his return as promised. He was a moral man, a church member, and according to the opinion of his neighbors, a good provider and an industrious citizen. He told not only his wife, but others why he was taking the trip to Canton, and no one who saw him received an impression against the truth of what he said, or that his leaving home would be permanent, or was at all remarkable. The journey was not a long one in miles, but he

contemplated an absence of several days. From the time of his departure there is no authentic evidence of his having been seen alive or his wagon and team having been found, though diligent efforts were made to obtain information. These facts by themselves, and without their influence being broken by the testimony regarding the quarrel between the insured and his wife, which the jury were free to reject, would range the case by the side of Tisdale v. Ins. Co., as there is no material difference between the facts of the two cases.

As that decision has been approved by our Supreme Court, we decide on its authority there was evidence from which the jury might find the insured died prior to the first default in an assessment; though we think the Iowa doctrine an extreme one, which tends to transfer an issue of fact from the region of proof to that of surmise.

3. In holding the case is for the jury, we emphasize the point that in order for plaintiff to recover, she must prove by the weight of the evidence her former husband died prior to February 2, 1901, and it is better to say nothing about probabilities in the instructions. In determining the question of whether his death occurred prior to said date, the jury should take into consideration his condition in life, character, habits and domestic relations, the circumstances attending his departure from home, and the fact that none of his friends, relatives or acquaintances have heard of him since; and unless, in view of these circumstances, and others which may appear in evidence, the jury believe from the evidence Mills died prior to February 2, 1901, the verdict should be for the defendant.

4. An exception was saved to the admission of the statement of Mills when he left home for the purpose of his trip and when he would return. The contention is he might be prosecuted for abandoning his family, and

146 App.—29

if he meant to do so, those declarations were self-serving. In our judgment the right rule to apply is the one thus stated by a learned commentator: "Whenever the demeanor of a person at a given time becomes the object of inquiry, his expressions, as constituting part of that demeanor, and as indicating his present intent and disposition, cannot be properly rejected in evidence as irrelevant." Evans note to Pothier on Obligations, II, 242. That passage is quoted in 1 Greenleaf (16 Ed.), sec. 108, and shown to be applicable to numerous instances, including those where a person "is upon a journey or leaves home, or returns thither, or remains abroad." The rule was followed in every case cited, supra, and the point was passed on in Carpenter v. Sup. Council, 79 Mo. App. 597, 603. If the statements of an absentee concerning why he was leaving home are excluded from the jury, they will be deprived of illuminating evidence upon the main inquiry. That the person who uttered the statement of purpose may have intended to safeguard himself, should be taken account of in weighing the statement.

5. An exception was taken to the exclusion of testimony sought to be elicited from a witness on cross-examination, concerning rumors he had heard in the vicinity of the plaintiff's home about the cause of Mills' leaving home. These neighborhood rumors were but hearsay and do not fall within any exception we are aware of, to the rule excluding hearsay testimony. The only authority cited on this point is Dowd v. Watson, 105 N. C. 476, where it is said: "To rebut the presumption of death from absence for more than seven years without being heard from, evidence of a general report among the missing person's friends and acquaintances that he is alive and in the United States army is admissible. . . Evidence by a witness that he had seen the missing person and he was alive is admissible." These rulings are irrelevant to the proposition in hand. If defendant wished to avail itself of the knowledge of neighbors re-

garding the cause of Mills' departure the rumors on the subject should have been traced to their source, and the person who started them have been called as a witness.

6. The petition ought to be amended by alleging Mills died prior to February 2, 1901.

The judgment is reversed and the cause remanded. All concur.