## SOVEREIGN CAMP, WOODMEN OF THE WORLD, v. PIPER. (No. 6400.)

(Court of Civil Appeals of Texas. San Antonio May 12, 1920. On Motion for Rehearing, June 9, 1920.)

1. **Death ⊛⇒2(1) — Insurance ⊛⇒665(5)— Death established by direct proof or circumstances; presumption of death in seven years.**

In a suit against an insurance company on a life policy, the death of insured may be established, like any other fact, by direct proof or circumstantial evidence, and after expiration of seven years the presumption of the death of a party will arise from an unexplained absence without information concerning him.

2. **Death ⊛⇒2(2)—Absentee presumed to have died shortly after leaving home for his work.**

Under Rev. St. 1911, art. 5707, where a member of a mutual benefit society, of happy disposition, fond of wife and children, left home to go to his work and was never seen again, an irresistible presumption arises that he died

shortly after leaving home, so that a subsequent forfeiture of his policy for nonpayment of dues was ineffectual.

3. **Insurance ⊛⇒693—Provisions against absence being evidence of death of member of benefit society void.**

In view of Rev. St. 1911, art. 5707, provisions in the by-laws of a mutual benefit society against absence or disappearance of a member from his residence unheard of for any length of time, being held to be evidence of the death of such member, are null and void.

4. **Insurance ⊛⇒812—Limitations do not run against action on policy until seven years from disappearance of insured.**

Limitations do not begin to run against an action on the policy of a member of a mutual society who disappeared from home until the expiration of seven years from the disappearance, when the beneficiary's cause of action accrues under the presumption of death.

### On Motion for Rehearing.

5. **Insurance ⊛⇒815(1)—Petition stated cause of action on mutual benefit society's policy.**

In a wife's action on her husband's policy issued by a mutual benefit society based on presumption of his death after seven years' absence, allegations of petition, though general, held sufficient to state cause of action in the absence of exception, the allegations, with the society's admissions, being sufficient to meet requirements that conditions precedent to recovery should be pleaded.

6. **Pleading ⊛⇒34(7)—Intendments indulged in favor of petition not attacked by special exception.**

When a petition is not attacked by special exception, every reasonable intendment will be read into its allegations to sustain it.

7. **Pleading ⊛⇒34(7)—Amendable petition sustains judgment.**

If a petition shows that it is amendable so as to meet every objection, it is sufficient to sustain a judgment.

8. **Pleading ⊛⇒205(2)—Defective averment not reached by general demurrer.**

A general demurrer admits the facts pleaded to be true, but denies that they constitute a cause of action or ground of defense, and, if enough is stated to enable the court to see that a good cause of action exists, however defectively, the insufficiency or defectiveness of the averment cannot be taken advantage of by a general demurrer.

Appeal from District Court, Bexar County; J. T. Sluder, Judge.

Suit by Mrs. Mary Piper against the Sovereign Camp, Woodmen of the World. From judgment for plaintiff, defendant appeals. Affirmed.

E. D. Henry and Atlas Jones, both of San Antonio, for appellant.

W. A. Wurzbach, of San Antonio, for appellee.

---

⊛⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

FLY, C. J. Appellee instituted suit against appellant to recover $3,000, alleged to be due on a policy of insurance issued by appellant on the life of Charles Piper, the husband of appellee, who it was alleged in the petition, died prior to December 1, 1911. The cause was tried without a jury, and judgment rendered in favor of appellee for the amount for which she sued.

The facts show appellant is a fraternal benefit association or society, which has a subordinate body in Bexar county, Tex., from which a benefit certificate was issued to Charles Piper insuring his life for $3,000 in favor of his wife, Mary Piper. About 10 o'clock on the morning of October 20, 1910, Charles Piper left his home and wife and five children, and she has never seen or heard of him from that hour until the time of trial of this cause on November 24, 1919. He was natural and in his usual jolly mood when he left. He had always lived happily with his family, and he had the reputation of being a good man. He had $700 on his person about the time of his disappearance. He had charge of a yard gang of about 24 men on a railroad running out of San Antonio. After the disappearance of Charles Piper, Mrs. Piper paid all dues and assessments from November 10, 1910, to February, 1913, inclusive. Charles Piper was suspended for nonpayment of dues on April 1, 1913. On the back of the certificate, and contained in the laws of appellant, was the following provision:

"The absence or disappearance of the member from his last-known place of residence for any length of time shall not be sufficient evidence of the death of such member, and no right shall accrue under any certificate of membership to his beneficiary or beneficiaries nor shall any benefits be paid until proof has been made of the death of the member while in good standing."

That provision was amended in 1911 so as to read:

"The absence or disappearance of a member, whether admitted heretofore or hereafter, from his last-known place of residence and unheard of, shall not be regarded as any evidence of the death of such member, nor give or create any right to recover any benefits on any certificate or certificates issued to such member or on account of such membership, in the absence of proof of his actual death, aside from and unassisted by any presumption arising by reason of such absence or disappearance, until the full term of his life expectancy at his age of entry, according to the Carlyle table of life expectancy, has expired, and then only in case all assessments, dues, special assessments, and all other sums now or hereafter required under the laws of the order be paid on behalf of such member within the time required until the expiration of the term of such life expectancy, and this by-law shall operate and be construed as a waiver of any statute of any state or country and any rule of the common law of any state or country to the con-

trary. In the event the payments are not made as above provided, said member shall stand suspended and cannot be reinstated except in the manner as provided in these laws as to reinstatement of living members."

The court found that Charles Piper died about October or November, 1910, but there was no testimony to that effect, unless the fact it is presumed that a man absent and unheard of for seven years is dead carries with it the presumption that he died about the time of his disappearance. If that presumption arises, then Charles Piper was dead in April, 1913, when the suspension for nonpayment of dues took place, and of course it amounted to nothing and could not affect the insurance.

[1] In a suit with an insurance company on a life policy the death of the insured may be established, as any other fact, by direct proof or circumstantial evidence, and after the expiration of seven years the presumption of the death of a party will arise from an unexplained absence without information concerning him. Under such circumstances, without any direct proof of death, the justifiable conclusion will be sustained that the party is dead. Primm v. Stewart, 7 Tex. 178; Modern Woodmen v. Ghromley, 41 Okl. 532, 139 Pac. 306, L. R. A. 1915B, 728, Ann. Cas. 1915C, 1063, and notes; Holland v. Nance, 102 Tex. 177, 114 S. W. 346.

In article 5707, Rev. Stats. Texas, it is provided:

"Any person absenting himself beyond sea or elsewhere for seven years successively shall be presumed to be dead, in any cause wherein his death may come in question, unless proof be made that he was alive within that time."

It will be noted that nothing is said in the statute about the absence being unexplained or that no information was obtained of him during the period of time mentioned, and in the case of French v. McGinnis, 69 Tex. 19, 9 S. W. 323, it was held that the statute required only proof of absence for seven successive years beyond the sea or elsewhere, without proof that he was alive during that period, to raise the presumption that the person was dead. The court said:

"The statute is clear and explicit, and needs no construction, and the charge was in conformity to it."

In the case of Sovereign Camp, Woodmen of the World, v. Ruedrich, 158 S. W. 170, this court held:

"Under the common-law rule it was necessary to show that the absent one had not been heard from by his relatives or friends for seven years, but under the statute mere proof of absence of one from his home, beyond the sea or elsewhere, for seven successive years, raises a presumption of death; which can be destroyed by proof of the existence of the absent one within that time."

That decision was approved by the Supreme Court.

[2] The evidence showed that Charles Piper was a man of a happy disposition; that his domestic relations were pleasant and agreeable; that he was very fond of his wife and children and devoted to his home. About 7 o'clock on the morning of October 20, 1910, he left his home and went to his work, but, as was often the case with him, returned about 10 o'clock for some light refreshments. After he had eaten he left home in his usual happy way, having on his person about $700. He had about 24 Mexicans under his authority as yardmaster, and he left his home to go back to where they were at work. He was a man of excellent reputation and thoroughly satisfied with his home and job. He has never been seen or heard of by any of his family or friends since he left his home on the morning of October 20, 1910. Under these facts the presumption that he died shortly after leaving his home is irresistible. It was utterly inconsistent with his habits, disposition, and surroundings for the inference to arise that he went away without a word of farewell and left all that was dear to him in the world. Death alone gives the answer to the question of what became of Charles Piper after leaving his wife, children, and home. As said by the Supreme Court of Iowa in Lisdale v. Life Ins. Co., 26 Iowa, 170, 96 Am. Dec. 136:

"Evidence of character, habits, domestic relations, and the like, making the abandonment of home and family improbable, and showing a want of all those motives which can be supposed to influence men to such acts, may be sufficient to raise the presumption of death, or from which the death of one absent and unheard from, may be inferred, without regard to the duration of such absence."

Justice, charity, and a due regard for a past life of probity and honor would demand that any unexplained and unnecessary absence from home and loved ones was caused by an irresistible force, such as death. Any other supposition would be too unjust, uncharitable, and improbable to be entertained.

Under like circumstances, when a man had disappeared and had not been heard from by his family for nearly two years, the Court of Civil Appeals at Dallas, in the case of Sov. Camp, W. O. W., v. Robinson, 187 S. W. 215, through Judge Talbot, held:

"There is much authority to the effect that, where one has been absent and unheard of for seven years, the presumption arises that he is then dead, but not that he died at any particular time theretofore, and that whoever finds it important to establish death at any particular period must do so by some kind of evidence. The evidence, however, need not be direct or positive; it may be circumstantial according to many of the adjudicated cases. * * * Those courts have adopted the doctrine of Tisdale v. Insurance Co., and hold with the Supreme Court of Iowa that the court or jury might, in a proper case, infer that the death of the absent person had occurred before seven years had expired, even though he was not exposed to some peril which would be apt to shorten his life, and that the conclusion of death at an earlier period could be drawn upon proof of any facts which, according to common experience, made it probable the party, if alive, would have communicated with his friends."

In that case the policy had been forfeited, and it became necessary for the plaintiff to establish the fact of the death of the insured before the date of the forfeiture. The evidence was no stronger in that case than in this, and yet the court held that it was sufficient. The Texas case is fully sustained by authorities cited in it as well as others. Bradley v. Modern Woodmen of America, 146 Mo. App. 428, 124 S. W. 69; Springmeyer v. Sov. Camp, W. O. W., 144 Mo. App. 483, 129 S. W. 273; Johnson v. Sov. Camp. W. O. W., 163 Mo. App. 728, 147 S. W. 510. It is stated in the last-named case that:

"Formerly the character of evidence necessary to establish death short of the seven-year period was that the person claimed to be dead must have been exposed to some peril or afflicted with some serious disease. But other character of evidence will now answer the purpose, as that the person was of good habits, comfortably and happily situated in life, of cheerful temperament, pleasantly and happily associated with friends and family, and other facts incompatible with his desertion and remaining away from family and friends without communicating with them."

The evidence in this case has met all the requirements named in the Missouri case, and the court was justified in finding that Charles Piper was dead before the policy was forfeited by appellant in April, 1913.

[3] The provisions in the laws of appellant against absence or disappearance of a member from his residence and unheard of for any length of time, being held to be evidence of the death of such member, are null and void. No corporation can, by a provision in its regulations, set aside a law of Texas, and make rules of evidence to suit its own ends and desires. No such preposterous and dangerous authority has ever been granted to a corporation in Texas, or tolerated by its courts, and when beneficiaries are compelled to sue a fraternal association in order to obtain insurance due them they cannot be met by rules of evidence formulated by such association which practically repeal rules made by a Legislature of Texas. Mystic Circle v. Hoskins, 171 S. W. 812; W. O. W. v. Robinson, herein cited.

Appellee for three years after the disappearance paid all dues and assessments, and probably would have continued to pay such dues and assessments had she not been informed by the secretary of the local body

that the insurance would not be paid no matter how much she paid. She then ceased the payments. She said, "When I did not hear from him, I thought he was dead," but she hoped and paid the assessments, until she was told by the secretary that there was nothing to be gained by it. Within two months after the seven years had elapsed, when the statute declared that Charles Piper was dead, she instituted this suit. She had the right to wait until the statutory period of seven years had expired before she brought an action for the insurance. It was, in effect, admitted in a letter written by the general attorney of appellant to the attorney of appellee on October 30, 1917, that if appellee showed the death of Charles Piper occurred at any time prior to his suspension in April, 1913, appellant would be liable. He wrote:

"It will be seen from the above that unless proof can be given of the death of the above named on or before April 1, 1913, the society cannot entertain a claim under said certificate."

[4] There was no claim that the statute of limitation had interposed in behalf of appellant. Limitation under the facts of this case did not begin to run until the expiration of seven years from the time that Charles Piper disappeared. Knights of Pythias v. Wilson, 204 S. W. 891. The cause of action did not accrue until October 20, 1917. Appellee could not have made satisfactory proof of the death of her husband, as required in the certificate, until the proof was furnished by the presumption created by article 5707, and necessarily limitation could not begin until that time.

If it were true that limitation should begin to run from the time that an absent one was suspended for nonpayment of dues, insurance companies could refuse acceptance of dues from friends of the party who had disappeared and proceed to suspend him, and then when the time had arrived for the presumption of death to arise to meet a claim for insurance with the plea of limitation; in other words, the insurance company demands proof that the party absenting himself was dead when the suspension took place, and, when that demand is met, claims that limitations should begin to run from the date proved instead of the date when death was established by the statutory provision. The statute of limitation would have no application in such a case and would not begin to run until the expiration of seven years from the time of the disappearance of the insured from his home.

The judgment will be affirmed.

MOURSUND, J., entered his disqualification in this case.

### On Motion for Rehearing.

FLY, C. J. The third assignment of error assails the petition on the ground that its allegations are not sufficient to form the basis for a judgment, and complaint is made in the motion for rehearing that it was not considered. However, the assignment was considered and thought to be without merit, and we adhere to that opinion. The petition was assailed in the lower court only through a general demurrer, and that appears to have been merely formal and perfunctory, as no action of the court was invoked thereon. The only proposition under the assignment attacks the petition on the ground "that it failed to allege the terms and conditions precedent set out in the contract of insurance between the insured and the defendant, and failed to allege that said terms and conditions precedent had been complied with."

[5] It is alleged in the petition that Charles Piper was a member in good standing of Sam Houston Camp No. 55; that at the time of his death all his dues and assessments had been paid, and that he was a member in good standing of the association, and had been a member in good standing for more than two years, and that the facts as to his disappearance were given to appellant; that demand had been made for the amount of the policy; and that payment had been denied because the "absence or disappearance of a member from his last-known place of residence for any length of time shall not be sufficient evidence of the death of such member, and no right shall accrue under his certificate of membership to a beneficiary or beneficiaries nor shall any benefit be paid until satisfactory proof has been made of the death of the member while in good standing." It was further alleged that it was impossible to make any other proof of the death of Charles Piper, except upon the presumption of death from an absence of seven years. The allegations, while general, are sufficient to state a cause of action in the absence of exception thereto. Appellant in its answer admits that it issued to Charles H. Piper a beneficiary certificate, and claims to have duly suspended him on April 1, 1913, because of failure to pay dues for February and March, 1913. That was an admission that Charles H. Piper was in good standing up to that time, which meant that he had complied with all conditions precedent to his good standing at that time. The petition alleged that the insured had disappeared on October 20, 1910, and that appellee sought to pay all assessments becoming due, but they were refused by the clerk of the subordinate camp. The allegations of the petition with the admissions of appellant were fully sufficient to meet the requirement that conditions precedent to recovery should be pleaded. If Charles H. Piper was in good standing in March, 1913, as admitted by appellant, he had paid all entrance fees, one advanced assessment of Sovereign Camp fund assessments and camp general fund, physi-

cian's examination fee, been properly obligated or introduced, and, as alleged, the beneficiary certificate delivered to him. An admission of membership in good standing was an admission that everything had been done to make him a member in good standing.

[6-8] When a petition is not attacked by special exception, every reasonable intendment will be read into its allegations to sustain it, and, applying this rule to the petition in this case, it was ample to sustain the judgment. In the trial court appellant sought to evade the payment to a widow of one of its members who had been paying it money for years, on the ground that he had been suspended for nonpayment of dues, and that the claim of the widow was barred by four years' limitation, but in this court it is sought to destroy the judgment on the ground that the petition failed to make certain allegations. The allegations were sufficient, however, to justify a reading into them by intendment of everything necessary to meet the decisions cited by appellant. If a petition shows that it is amendable so as to meet every objection, then it is sufficient to sustain a judgment. Under the Texas rule:

"The general effect of a general demurrer is to admit the facts pleaded to be true, but to deny that they constitute a cause of action or ground of defense, and the only question to be considered under it is whether any cause of action or ground of defense is described in the pleading demurred to. Consequently, if sufficient be stated to enable the court to see that a good cause of action exists, however defectively, the insufficiency or defectiveness of the averment cannot be taken advantage of by a general demurrer."

In the case of Northwestern Ins. Co. v. Woodward, 18 Tex. Civ. App. 496, 45 S. W. 185, it is stated by this court:

"A defective statement of a cause of action is not subject to a general demurrer. If it is so stated that it is amendable, it is good against a general demurrer."

There is no merit in the motion for rehearing, and it is overruled.