MARY SPRINGMEYER, Respondent, v. SOVER-EIGN CAMP WOODMEN OF THE WORLD, Appellant.

### Springfield Court of Appeals, June 6, 1910.

1. **INSURANCE: Death: Sufficiency of Evidence Tending to Show Death: Instructions.** In a suit on a life insurance policy there was no direct evidence of the death of the insured, but the fact was sought to be established by circumstances showing the disappearance of the insured from his home and from the knowledge of his family and inability to learn of his whereabouts after diligent efforts for that purpose. This suit was brought within three years of the insured's disappearance. A witness for defendant testified that he talked to insured two days after he had left home, and insured told him he had abandoned his family. Evidence examined and held that if insured had been seen, as testified by defendant's witness, the plaintiff could not recover and that the trial court erred in refusing to give an instruction to this effect.

2. **DEATH: Presumption of Death: Absence for Seven Years.** Where one has been absent and unheard of for seven years, the presumption arises that he is then dead, but not that he died at any particular time theretofore; but the legal presumption of death permitted upon the lapse of seven years is not allowable unless there is evidence tending to prove that death occurred at an earlier date, or showing a greater probability of death than life at the prior date. In other words, mere absence unattended with other special circumstances will not be sufficient to establish the death.

3. **——: ——: ——: Burden of Proof.** Where the legal limit of seven years is not relied upon, the burden of proving the death within that period is cast upon the party affirming that fact, but it is not indispensable that the proof offered for that purpose should show the missing person was subject to

any specific peril at any particular time. It is enough to adduce evidence of any other circumstances calculated to shorten life before the lapse of seven years.

4. ———: **Evidence Tending to Show Death.** The rule seems to be well established in this country that where one, steady in his habits, successful in his profession or business, contented and respected, having a fixed residence and pleasant domestic relations, suddenly disappears and no tidings of him are received, such circumstances, if satisfactory to the jury, may warrant them in finding his death at or about the time of his disappearance.

Appeal from the St. Louis City Circuit Court.—*Hon. George H. Shields,* Judge.

REVERSED AND REMANDED.

*Phil H. Sheridan* and *Henry B. Davis* for appellant.

The instruction in the nature of a demurrer to the evidence should have been given. Lancaster v. Ins. Co., 62 Mo. 128; Hancock v. Ins. Co., 62 Mo. 26; Donaldson v. Lewis, 7 Mo. App. 403; Dickens v. Miller, 12 Mo. App. 408.

*Charles Fensky* for respondent.

GRAY, J.—This action was commenced in the circuit court of the city of St. Louis, by respondent, who claims to be the widow of one Lewis J. Springmeyer, against the appellant, a benevolent organization, of which Springmeyer was a member, and the action is on certificate issued by the appellant to Springmeyer on the 6th day of November, 1897. The cause was tried before a jury on the 16th day of April, 1908, resulting in a verdict in favor of the respondent, in the sum of $2186, the full amount of the certificate. A judgment was rendered upon the verdict, and after an unsuccessful motion for new trial, the defendant appealed.

In the trial court, and on the appeal in this court, appellant bases its demand for a reversal of the judgment upon the single proposition that the evidence is not sufficient to establish the death of the plaintiff's husband.

There was no direct evidence of the death of the plaintiff's husband; but the fact was sought to be established by circumstances, the chief of which was the disappearance of said insured person from his home, and from the knowledge of his family, and the inability to learn of his whereabouts after diligent effort for that purpose had been made. If giving the evidence the most favorable construction of which it is capable in favor of the appellee, the jury was warranted in finding the death of the plaintiff's husband, then the judgment should not be reversed for failure of proof.

On the part of the plaintiff, it is claimed that her husband left her on the 5th day of July, 1905, and she had not heard of him since that time; that at the time of his disappearance he was working as a day laborer and had been so employed at the place where he was working at the time he disappeared for about a year and a half; that he lived on Conde street in the city of St. Louis with his wife and two children of tender years; that the husband had steady employment and brought his money home to her and that she gave him in return what money he needed for his own purposes; that he got along with his wife and children very well, except at times when he became dissatisfied and angry, and at such times threw the dishes and other things at the different members of his family; that he came home from his work on the 5th day of July, 1905, gave her his wages and a receipt for the rent he had paid, made some changes in his clothes, took a ring and watch chain he had been wearing and laid them on the sideboard with the remark that he did not want to wear them all the time as they would get spoiled. When he left home he said he was going to attend his lodge meeting, and plaintiff told him the lodge did not

meet that night, but he insisted that it did, and he left his house going toward the river.

The plaintiff also offered testimony tending to prove that on two occasions at least, her husband had said that when he committed suicide they would not find his body as he would tie a large rock to it and sink it to the bottom of the river; that diligent inquiry was made for his whereabouts and an advertisement was published in the Sovereign Visitor, the lodge paper of the appellant, and a like advertisement was published in different papers in the city of St. Louis, but no trace of her husband had ever been found.

On behalf of defendant, testimony was offered tending to prove that all was not pleasant in the domestic relations of plaintiff and her husband, and that on different occasions he complained of his situation. In addition to the above, the defendant offered a witness who testified that he was a member of the lodge and was acquainted with plaintiff's husband, and that he saw him and talked with him on the 7th day of July, 1905, at the round house of the Burlington Railroad Company, in the city of St. Louis; that he asked him if he was working and he said he had quit and was going to leave his home because he could not get along with his wife, and that he walked away, going in the opposite direction from the river. At the time this witness claimed that he had the conversation with the plaintiff's husband, he lived about fifty yards from Mr. Springmeyer and was informed by his wife when he went home that Mr. Springmeyer was gone, but admits he did not tell Mrs. Springmeyer about having the conversation with him because he thought Springmeyer would return.

The evidence further shows that Springmeyer was a poor man, possessed of but little property.

The instructions given in behalf of plaintiff, properly submitted plaintiff's theory to the jury. In behalf of the defendant the following instruction was asked: "The court instructs the jury that if the jury find from

the evidence that Springmeyer was seen alive after the 5th day of July, 1905, the jury will find for the defendant." This instruction the court refused, and the defendant complains of the action of the court in so doing.

The rule seems to be well established in this country that where one, steady in his habits, successful in his profession or business, contented and respected, having a fixed residence and pleasant domestic relations, suddenly disappears and no tidings of him are received, such circumstances, if satisfactory to the jury, may warrant them in finding his death at or about the time of his disappearance. [Tisdale v. Ins. Co., 26 Ia. 170, 96 Am. Dec. 136; Hancock v. Ins. Co., 62 Mo. 26; Northwestern Life Ins. Co. v. Stevens, 71 Fed. 258; Spahr v. Life Ins. Co., 108 N. W. 4; Modern Woodmen of America v. Joseph Gerdom, 82 Pac. 1100, 2 L. R. A., N. S. 801; Seeds v. Grand Lodge, 61 N. W. 411; Magness v. Modern Woodmen of America, 123 N. W. 169; Carpenter v. Sup. Council Legion of Honor, 79 Mo. App. 597.]

Where one has been absent and unheard of for seven years, the presumption arises that he is then dead, but not that he died at any particular time theretofore. Where the legal limit of seven years is not relied upon, the burden of proving the death within that period is cast upon the party affirming that fact. To do so, however, it is not indispensable that the proof offered for that purpose should show the missing person was subject to any specific peril at any particular time. It is enough to adduce evidence of any other circumstances calculated to shorten the life before the lapse of seven years. [Lancaster, Admr., v. Ins. Co., 62 Mo. 121; Hancock v. Ins. Co., 62 Mo. 26; Carpenter v. Sup. Council, 79 Mo. App. 597.]

But the legal presumption of death permitted upon the lapse of seven years, is not allowable unless there is evidence tending to prove that death occurred at an earlier date, or showing a greater probability of death

than life at the prior date.    In other words, mere absence, unattended with other special circumstances, will not be sufficient.

In the case of Hancock v. Ins. Co., supra, the insured was a single man, who, for years previous to his alleged death, had been in the habit of spending his time in the south, engaged in mining speculations.   He left the south and for some time visited friends and relatives in Illinois, and from there went east, and during the winters of 1860 and 1861, boarded with a Dr. Scott, in New York City.   The Rebellion at that time was about to commence, and he was an outspoken sympathizer with the southern people and declared his purpose to go and assist them in their struggle.   About the first of March, 1861, he left his room with the intention of going to Brooklyn, and did not return.   His clothes and valise were found in his room, but they were of little value. His friends and relatives testified that they never heard of him after that time.   It appeared that he was indebted to the man with whom he boarded and others for borrowed money, and the suit was not commenced until seven years after his disappearance.   The court held that under the evidence, there was no presumption that the insured died within seven years from the time he was last heard of.

One of the leading cases in this country is Tisdale v. Ins. Co., reported in the 26 Iowa 170, and the Supreme Court of our State reviews that case approvingly in the Hancock case, but says: "There can be no analogy between them."   In the Iowa case, the insured was a young man of exemplary habits, fair business prospects, respectably connected, and of the most happy domestic relations.   He had the fullest confidence of his friends and the entire affection of his wife, and was living in apparent happiness with no cause of discontent with his condition which would have caused him to break the domestic and social ties which he was so pleasantly enjoying.   On Sept. 25, 1866, he visited Chicago

upon business, and was last seen on the corner of Lake
and Charles streets in that city, about three o'clock in
the afternoon. No trace of him was afterwards discov-
ered, though his friends made every effort to find him
and ascertain the cause of his mysterious disappearance.
A large reward was offered through the newspapers
for information that would lead to his discovery, dead
or alive. The police were employed to search for him
without result. He owed no debts amounting to any
considerable sum, and his valise containing clothing and
other articles ordinarily carried by travelers, was found
at his hotel, and his hotel bill was unpaid. Under those
circumstances, the Supreme Court of Iowa submitted
the case to the jury.

In Lancaster v. Ins. Co., supra, the suit was com-
menced within seven years after the disappearance of
the insured, and a recovery was permitted.    It was
claimed that the evidence was insufficient to submit the
issue of death to the jury. The court declared the rule
as follows: "Under the rule adopted by this court,
circumstances other than those of particular peril cal-
culated to shorten or destroy life, may be sufficient to
raise a presumption of the death of an absent person
from whom no tidings have been received, without re-
gard to the duration of such absence."

In that case the insured took passage at Chicago on
a steamboat for Detroit. He appeared to be sick and re-
mained in his state room and took his meals there.
Sometime during the night in which the steamer reached
Detroit, the insured disappeared and was not afterwards
heard of. The plaintiff offered testimony to the effect
that the insured did not leave the steamboat at Detroit,
but was missing when the boat arrived at that city,
and therefore, there was the strong circumstance that
the insured was on the steamboat when it left Chicago,
was sick and despondent, and when the boat arrived at
Detroit, he was missing, and his personal property was
found on the boat.

In the case of Carpenter v. Sup. Council Legion of Honor, supra, the insured was sixty-three years of age, resided with his wife, and disappeared on the 3rd day of January, 1897, and the suit was brought within the seven years. The testimony showed that about twelve years previous, he had met with a total loss of fortune and for sometime previous to his disappearance, was unemployed, and without any means of support except the charity of his friends. He became greatly depressed in spirits and often expressed an intention of committing suicide. He was a man of temperate habits, tenderly attached to his family. He wrote his daughter often suggesting that he had lived too long and that life was not worth living. On the morning of his disappearance, he left a watch belonging to his wife which he had carried for years, and some memorandum books of his own and went down town with but a small amount of change, and the last point at which he was seen was the office of the harbor commissioner on the bank of the river, to which he repaired about five o'clock in the afternoon in great despondency, and where he recounted to an old friend, his disappointment, and said he had better jump in the river. His friend tried to remove his gloom, but was unsuccessful and the insured left saying he did not know where he was going. Advertisement in the newspapers and by other means, met with no success. Upon these facts, the court permitted the case to go to the jury, and its action was approved on appeal.

We believe that without an exception, the courts require more proof of mere absence in order to raise an issue as to the death of a person where the period of absence is less than seven years, and there must be other facts and circumstances shown in order to overcome the presumption of life. [Seeds v. Grand Lodge, 61 N. W. 411; Ryan v. Tudor, 31 Kans. 366; Hyde Park v. Canton, 130 Mass. 505; Lewis v. Mobley, 20 N. Car. 323.]

The facts and circumstances relied on in this case to overcome the presumption of life, are, that the de-

ceased left his home and no trace of him could be found after diligent search and inquiry for more than two years, and the further fact that he had threatened to commit suicide. The plaintiff tried to establish the fact that the insured was happy and contented in his home life, but the testimony does not bear out that claim. It stands admitted that at different times he offered violence to the members of his family, and there is also testimony in the record to the effect that he was dissatisfied with the conditions of his home. In addition thereto, is the testimony of the witness that he saw him and talked with him two days after he had disappeared from his home, and that he then said he was going to desert his family.

As we have stated in a former part of this opinion, Tisdale v. Ins. Co. is one of the leading cases on the question now under discussion. In that case it was said: "Any facts or circumstances relating to the character, habits, condition, affections, attachments, prosperity, and objects of life, which usually control the conduct of men, and are the motives of their actions, are competent evidence from which may be inferred the death of one absent and unheard from, whatever has been the duration of such absence."

In Seeds v. Grand Lodge, supra, the Supreme Court of Iowa, (in which the Tisdale case was decided) reviewed that case in another cause, wherein the insured had been unheard of for more than seven years, but had been seen and heard of after he had left his wife, and at such time was claiming to be a single man. The evidence showed he was healthy and the court said (after making the above quotation from the Tisdale case): "Surely, 'the character, habits, condition, affections, attachments, prosperity and object in life' of Edward Rowell, as shown in the evidence, do not warrant the conclusion even after a lapse of seven years, that his absence and silence are in consequenc of death. On the contrary, they show that his absence and silence are vol-

untary, and fully explain his absence and silence as the result of causes other than his death. We are of the opinion, upon the whole record, that it would have been the duty of the trial court to set aside a verdict found upon this evidence in favor of the plaintiff."

In Modern Woodmen of America v. Gerdom, 82 Pac. 1100, the Supreme Court of Kansas declared the rule in the following language: "It is. true that death may be proved by circumstantial evidence, and that absence for a considerable period of time is not indispensable in order to generate a satisfying conviction of the fact. But in all such instances the death of the absent party must fairly be demonstrated by the circumstances of the disappearance. And in some cases the age, health, disposition, moral character, domestic relations, social rank, and financial condition of one who suddenly disappears may themselves, without the aid of other circumstances, stifle all doubt that the person is dead. But the strength of the induction of death lies in the cogency of the circumstances of disappearance, and not in the fact of absence long protracted."

In Spahr v. Mutual Life Ins. Co., supra, the insured had been absent and unheard of for seven years when the suit was commenced. The plaintiff, his wife, brought an action against the defendant on a policy to recover two thousand three hundred dollars. The defense was that the insured was still living. There was a judgment in favor of the plaintiff and the defendant appealed. The case is a recent one, decided by the Supreme Court of Minnesota, on the 13th day of July, 1906. The court, after adopting the above quotation from the Tisdale case, said: "The rule is based upon the reasonable probability that a man of such character and so circumstanced would, if alive, communicate with his family. The plaintiff attempted to establish the fact that the insured was a man of such character and so circumstanced. The evidence tended to show that he was a clergyman of education and culture; that he was suc-

Springmeyer v. Woodmen of the World.

cessful in his sacred calling and respected by his parishioners and friends; that he was thirty-one years old; that his family consisted of his wife and two daughters, of whom he was fond; that his credit was good; that on Sunday, April 3, 1898, he held services in his church; and on the next day drove to the station to make a short trip and requested his wife to meet him on his return the following Thursday, but he did not return then, or any other time, and that he has not communicated with his family."

In behalf of the defense, the testimony tended to prove that although a clergyman he was a drunkard and a libertine, and when drunk abused his wife. One witness testified that the insured came to Salt Lake City about April 1, 1898, and there remained until November of that year, and the court said there was nothing in the testimony of this witness to indicate that her testimony was not credible. There was further testimony that he paid considerable attention to an unmarried woman and asked her to secretly marry him. Upon this evidence the court held that there was no presumption that the insured died within seven years from the time he left his home and was unheard of, and as it was necessary to prove that he died within seven years, the verdict for the defendant was upheld.

In Donovan v. Twist, 93 N. Y. S. 990, it is held that evidence that a person had left his wife and children to go to another city, and had not been heard from for sixteen years, was sufficient to raise a presumption of death, when considered in connection with the fact that after leaving home he was known to be living in adultery.

The whole theory of plaintiff's case is, that on the evening of July 5, 1905, the insured left his home with the intention of committing suicide, and that he did not return that night or afterwards, because he was dead.

The defendant's refused instruction was based squarely upon the testimony of the defendant to the ef-

fect that the insured was seen two days after July 5th, and then and there declared he had abandoned his family. This testimony was very important, and practically decided the case, and if the jury believed it the plaintiff's case was destroyed and was without substantial evidence to support it. It seems apparent that the refusal of this instruction was substantial error, indeed, for which a new trial must be granted.

We are asked to reverse the judgment without remanding the cause for new trial, and if we could take the testimony of the witness who claims he saw and talked with the deceased on the 7th, to be true, we would not hesitate to do so. Since the trial, considerable time has elapsed, and it may be that other facts may develop on another trial which will justify the submission of the case to the jury, and therefore, we will reverse the judgment and remand the cause. All concur.