LAURA B. JOHNSON, Resondent, v. SOVEREIGN CAMP WOODMEN OF THE WORLD, Appellant.

**Kansas City Court of Appeals, May 13, 1912.**

1. **INSURANCE: Disappearance: Presumption of Death.** Seven years absence unaccounted for, will raise a presumption of death, but not that the death occurred at any particular time in the seven years. If necessary to establish any particular time of death, it must be done by satisfactory evidence over and above the absence for the period named.

2. ———:. ———: ———: **Evidence.** To show that a person died at some particular time within the seven years absence, it was formerly necessary to show that he was last seen in some position of peril, or afflicted with some serious disease, etc. But the more recent rule permits other character of evidence, such as that he disappeared and has not been heard of; that he was well and happily situated in life; and other facts incompatible with his being alive and deserting his family and friends.

3. ———: ———: ———: ———. A was a member of a fraternal benefit society and took out a benefit certificate of insurance for his wife. He paid dues until he disappeared and his wife then continued to pay for two years longer, when she ceased and the policy was thereafter forfeited for non-payment. His disappearance was sudden and without warning and continued more than seven years at time of the trial. He left a wife and two small children. He was on good terms with his family and had surplus money in the bank. When he left home he did not take with him any clothing and had not collected his monthly dairy bills due from customers. Strict inquiry and search was made for him by his relatives and advertisements put in papers and no trace of him ever found. It was *held* that this was sufficient evidence for a jury to find that he had died before the last payment of his dues, and a judgment for his insurance was proper.

Appeal from Randolph Circuit Court.—*Hon. A. H. Waller*, Judge.

AFFIRMED.

*A. H. Burnett* and *Bailey & Hart* for appellant.

*W. P. Cave* for respondent.

ELLISON, J.—Plaintiff's action is based on a fraternal benefit certificate in her favor, issued by defendant to her husband A. W. Johnson on the 16th of July, 1900. Dues were properly paid by the husband up to the 19th of December, 1902, when he disappeared. Dues were then paid up to the 1st of March, 1904, by the plaintiff and none were paid after that date. The action is based on the theory that Johnson died prior to the 1st of March, 1904, for, from that time, as just stated, no dues were paid. The judgment in the trial court was for the plaintiff.

It being conceded that no dues were paid after the 1st of March, 1904, it devolved on plaintiff to show that Johnson died prior to that time. More than seven years had elapsed from his disappearance until the bringing of this action, and while that period is sufficient to create a presumption of death, it is not a presumption that he died at any particular time during the running of seven years. "If it be important to any one to establish the precise time of such person's death, he must do so by evidence of some sort, to be laid before the jury, beyond the mere lapse of seven years." [Hancock v. Life Ins. Co., 62 Mo. 26; Lancaster v. Life Ins. Co., 62 Mo. 121; Duff v. Duff, 146 Mo. App. 247; Springmeyer v. Woodmen of the World, 144 Mo. App. 483; Bradley v. Modern Woodmen, 146 Mo. App. 428.] Formerly the character of evidence necessary to establish death short of the seven years period, was that the person claimed to be dead must have been exposed to some peril, or afflicted with some serious disease. But other character of evidence will now answer the purpose; as that the person was of good habits, comfortably and happily situated in life,—of cheerful temperament, pleasantly and hap-

pily associated with friends and family, and other facts incompatible with his desertion and remaining away from family and friends without communicating with them. [Hancock v. Insurance Co., supra; Duff v. Duff, supra; Springmeyer v. Woodmen of the World, supra; Bradley v. Modern Woodmen, supra.] In such way a case may be built up of such convincing strength as to overcome the usual presumption of the continuance of life.

The case as made for plaintiff along the line we have suggested, is that Johnson was born and reared in Randolph county, where his mother and two brothers still live. That he left Randolph county in 1898 and went to Clinton, Missouri, where he resided with his wife and two children, eight and ten years old, and operated a dairy on a rented farm. That he owned a farm in Randolph county, and while both it and the dairy were mortgaged, they were worth much more than the amount of the incumbrances. A while before his disappearance he had bought Christmas presents for the children, and the evening he left he spoke of his arrangements for an enlargement of his barn. He left money in the bank and had not collected his last month's dairy bills. This is a short statement of the conditions the day he disappeared.

On that day, at five o'clock in the evening, he returned to his house from Clinton, something less than two miles away, and after helping about the milking, he put on a clean collar and returned to Clinton; but without taking any clothing or anything else with him. Not having returned at two o'clock in the morning, his wife began making inquiry (presumably by telephone). She heard nothing from him and neither she, nor his mother or brothers, have ever seen or heard from him since. She instituted inquiry and so did the defendant, through its proper officers. Advertisements were put out and cards of inquiry sent, but no response ever came and all search made for him failed.

As stated, he did not draw money from the bank, or collect bills, wherewith to provide himself for travel or for a protracted stay from home.

There was evidence in defendant's behalf tending to show that Johnson had fallen into the habit of gambling and staying out of nights. That he made a futile effort to quit such practice, but failed, and that he was despondent and had been heard to say he was going to leave the country and be lost to the world; and that he was seen to take a train at Clinton the night of his disappearance. There was an effort made to show that the relations between him and his wife were seriously unpleasant, but she denied this. She said she had spoken to him about staying out at night too late. That his business required his getting up early and retiring late and that he could not keep his health and remain up so late, and besides it was a bad example for their boy. But we do not think the jury, after considering all the evidence on this head, were bound to conclude that their relations were unhappy. In rebuttal, she testified in reference to his having been seen at the depot at Clinton the night he disappeared, that they lived near a railway crossing where the trains were compelled to stop, and that her husband frequently would go to the depot, get on a train and ride down as far as the crossing. There was also some evidence, not very satisfactory, as to his having been seen in Wichita, and perhaps some other supposed clues. When plaintiff heard of the Wichita matter, she sent out there, without finding him, and when she or his relatives learned of anything purporting to be about him anywhere in the United States, they investigated and found it to be a mistake. And so it is; if he is not dead, he was at time of trial, after the lapse of seven years, still adrift and his whereabouts wholly unknown. The fact cannot be known to an absolute, or, we might say, a physical, certainty; neither his live, nor dead body has been

seen; and hence we must in this, as in all other cases falling short of actual and demonstrative proof, leave it for a jury to say what the reasonable probability is. That was done in this case and our authority to interfere cannot be exercised unless there has been error at the trial, and we have not found any. Some complaint is made of plaintiff's instruction No. 2, but we find it altogether unobjectionable. Considering the instructions for each party, there is no room to say that the jury was misled or misdirected.

The foregoing compose the principal points made for reversal, and our labor in disposing of them has been greatly lessened by the able and comprehensive opinions of Judges Goode and Gray of the St. Louis and the Springfield Courts of Appeals in the cases above cited.

There was some objection made to the admission of evidence concerning the efforts and results of the inquiry and search made for Johnson. But clear it was not subject to the objection made.

The judgment will be affirmed. All concur.