(Court of Criminal Appeals of Texas. June 7, 1916. Rehearing Denied June 23, 1916.)

1. CRIMINAL LAW ☞1092(16), 1099(13) — BILLS OF EXCEPTIONS—TIME FOR FILING—STATUTE.

In a prosecution for violation of the pure feed law, a misdemeanor, where the bills of exceptions and statement of facts were filed in the lower court after the adjournment of the term at which a conviction was had, without an order authorizing the filing, the court will not review them on appeal.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2847, 2876; Dec. Dig. ☞1092(16), 1099(13).]

2. INDICTMENT AND INFORMATION ☞110(2)—INFORMATION—SUFFICIENCY.

Under Acts 29th Leg. c. 108, as amended by Acts 30th Leg. c. 131, relating to pure feedstuff and making a violation of its provisions a misdemeanor; and using terms "concentrated commercial feeding stuff" and "concentrated feed stuff" interchangeably, not attempting to make any difference between them so far as the offense is concerned, an information naming the cotton seed cake described therein as "concentrated feeding stuff," omitting the word "commercial," was sufficient.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. §§ 290–294; Dec. Dig. ☞110(2).]

3. ADULTERATION ☞2—STATUTES—VALIDITY—CONSTITUTIONALITY—PUBLIC POLICY.

Acts 29th Leg. c. 108, as amended by Acts 30th Leg. c. 131, relating to pure feeding stuffs and prescribing as a punishment for its violation a fine and imprisonment, is not void as against public policy because it makes the agent of a principal guilty of an offense instead of making the principal so only, since the person who actually commits a crime will be punished therefor whether he is acting on his own initiative or is an agent for a principal, and it is with rare exceptions that a corporation is punished for violation of a criminal statute.

[Ed. Note.—For other cases, see Adulteration, Cent. Dig. §§ 1, 2; Dec. Dig. ☞2.]

Appeal from Hemphill County Court; J. L. Jennings, Judge.

Frank Guild was convicted of violating the pure feedstuff law, and he appeals. Affirmed.

Hoover & Dial, of Canadian, for appellant. C. C. McDonald, Asst. Atty. Gen., for the State.

PRENDERGAST, P. J. Appellant was convicted of violating our pure feedstuff law, and the lowest punishment assessed.

[1] The record shows that what purports to be bills of exceptions and a statement of facts were filed in the lower court some time after the adjournment of the term at which the conviction occurred without any order authorizing this to be done. The statute and the uniform decisions of this court are clearly to the effect that under such circumstances in misdemeanor cases this court can consider none of them. Hence the Assistant Attorney General's motion to strike them out must be, and is, sustained. Some of these cases are collated in 2 Vern. Crim. Stats. p. 827.

[2] Appellant's contention in his motion in arrest of judgment that the information is insufficient because he named the cotton seed cake described therein as "concentrated commercial feeding stuff," when the statute makes it "concentrated feeding stuff," omitting the word "commercial," is untenable. The original act of 1905 (page 207), with certain sections of it amended by the Act of 1907 (page 243), uses the terms "concentrated commercial feeding stuffs" and "concentrated feed stuffs" rather interchangeably. At least under the terms of this statute, there is no difference between the two. The statute does not attempt to make any difference between them, so far as the offense is concerned, but, as stated, treats them as if they were the same.

[3] Neither is there anything in appellant's contention that said law is unreasonable, and against public policy, and void for the reason that it makes the agent of the principal guilty of an offense instead of making the principal so only. It is the general principle of law in this state that the person who actually commits a crime shall be punished therefor, whether he be acting on his own initiative or is an agent for a principal, and especially is this true in misdemeanor cases, as this case is. It is with rare exceptions our law provides for the punishment of a corporation for the violation of a criminal statute. In some instances it does so by prescribing a penalty to be recovered by suit in contradistinction from a fine or imprisonment therefor. In this case appellant's principal was a corporation as he claimed. The statute prescribes as a punishment for its violation a fine, or imprisonment in the county jail, or both. If a corporation was insolvent, there would be no way whatever of enforcing a conviction of it. It could not be imprisoned either as a part of the punishment or for failure to pay the money fine. Hence, in order to enforce the law, it is essential that the agent who commits the crime shall be punished therefor instead of his principal, a corporation.

The judgment is affirmed.

## SOVEREIGN CAMP OF WOODMEN OF THE WORLD v. ROBINSON.* (No. 7544.)

(Court of Civil Appeals of Texas. Dallas. May 13, 1916. Rehearing Denied June 17, 1916.)

1. CONSTITUTIONAL LAW ☞175 — VESTED RIGHTS—RULES OF EVIDENCE.

No person has a vested right in the rules of evidence, which may be changed by the state,

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error pending in Supreme Court.

if its action relates only to evidence, without violating the contract clause of the Constitution.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 519, 520; Dec. Dig. ⊕ 175.]

2. INSURANCE ⊕693 — FRATERNAL INSURANCE—DISAPPEARANCE CLAUSE—VALIDITY.

A subsequently adopted by-law of a fraternal society, as to a certificate holder, who, in his application, had agreed that all existing or subsequent by-laws should form a part of his certificate, providing that a member's absence or disappearance from his last place of residence should not be any evidence of his death, nor create any right to recover on any certificate, without proof of his actual death, until the full term of his life expectancy at his entry had expired, and that it should be construed as a waiver of any statute or rule of the common law to the contrary, contravened Rev. St. 1911, art. 5707, providing that absence for seven years shall raise a presumption of death and was invalid.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1833; Dec. Dig. ⊕693.]

3. CONTRACTS ⊕127(1)—FRATERNAL BENEFICIARY INSURANCE—DISAPPEARANCE CLAUSE—RULES OF EVIDENCE—OUSTING COURT OF JURISDICTION.

Such by-law, in effect stipulating that certain evidence only should be admissible in case of litigation subsequently arising under the contract, could not be allowed to control the action of the court in the admission of or the effect to be given the evidence, as courts will not permit the course of justice to be affected by stipulations so as to defeat the ends to be subserved by such litigation, or allow the parties to a contract to agree to oust the court's jurisdiction over such contracts.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 608–610, 613–616; Dec. Dig. ⊕ 127(1).]

4. INSURANCE ⊕693 — FRATERNAL BENEFICIARY INSURANCE—BY-LAWS—REASONABLENESS.

A by-law of a fraternal beneficiary association, to be valid, must be reasonable.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1833; Dec. Dig. ⊕693.]

5. DEATH ⊕2(1) — PRESUMPTION FROM ABSENCE.

The law or rule of evidence embodied in Rev. St. 1911, art. 5707, that the presumption of the duration of life ceases at the end of seven years' unexplained absence, does not limit the presumption of death to an absence for the space of seven years, but, on proper evidence, death before the expiration of such time may be inferred.

[Ed. Note.—For other cases, see Death, Cent. Dig. §§ 1, 2; Dec. Dig. ⊕2(1).]

6. DEATH ⊕2(1) — PRESUMPTION FROM ABSENCE—EVIDENCE.

Evidence of character, habits, domestic relations, etc., making the abandonment of home and family improbable, and showing the want of all the motives which can be supposed to influence men to such acts, may be sufficient to raise the presumption of death, or from which the death of one absent and unheard of may be inferred without regard to the duration of such absence, even though he was not shown to have been exposed to any peril likely to shorten his life.

[Ed. Note.—For other cases, see Death, Cent. Dig. §§ 1, 2; Dec. Dig. ⊕2(1).]

7. DEATH ⊕2(2) — PRESUMPTION FROM ABSENCE—TIME.

Where one has been absent and unheard of for seven years, the presumption arises that he is then dead, but not that he died at any particular time theretofore, and, if important to establish death at any particular time, it must be done by evidence.

[Ed. Note.—For other cases, see Death, Cent. Dig. § 3; Dec. Dig. ⊕2(2).]

8. DEATH ⊕4 — ABSENCE — SUFFICIENCY OF EVIDENCE.

In a widow's action upon a certificate of insurance issued upon life of her husband, evidence *held* to sustain the finding that the insured was dead, and that he died at or about the time of his disappearance from home after which time nothing was heard or known of him.

[Ed. Note.—For other cases, see Death, Cent. Dig. §§ 5, 6; Dec. Dig. ⊕4.]

Appeal from District Court, Dallas County; Murphy W. Townsend, Special Judge.

Action by Mrs. Carrie Robinson against the Sovereign Camp of the Woodmen of the World. Judgment for plaintiff, and defendant appeals. Affirmed.

Arthur H. Burnett, of Omaha, Neb., and Flippen, Gresham & Freeman, of Dallas, for appellant. Henry P. Edwards and Cockrell, Gray & McBride, all of Dallas, for appellee.

TALBOT, J. The appellee, as the surviving wife of James W. Robinson, sued the appellant on a certificate of insurance issued upon the life of the said James W. Robinson for the sum of $3,000 to be paid, under the terms of the certificate, upon the death of the said Robinson. The regular judge being disqualified, the case was tried in the district court of Dallas county, without a jury, before the Honorable Murphy W. Townsend, special judge duly selected by agreement of counsel, and the trial resulted in a judgment in favor of the appellee. The trial court, at the request of the appellant, filed conclusions of fact and law. The court's conclusions of fact are substantially as follows: Appellee's husband, James W. Robinson, became a member of Post Mountain Camp No. 56, of the appellant, located at Burnet, Tex., May 28, 1906, and the appellant then insured the life of the said Robinson by its written policy of insurance or benefit certificate in favor of his wife, Mrs. Carrie Robinson, in the sum of $3,000. About the year 1910, the said James W. Robinson transferred his membership to a local camp of the appellant at Grand Prairie, in Dallas county, Tex., where the same thereafter remained. The said James W. Robinson and the appellee, his wife, on September 14, 1914, and for about two years prior thereto, resided in Oak Cliff, Dallas, Tex., with their two small children. On or about said date the said James W. Robinson disappeared from Dallas and from his home therein, since which time he has never been seen, heard from, or heard of by any known person, either in Dallas or at any other place where he had

at any time theretofore lived, notwithstanding diligent search and inquiry for him have been made, kept up, and continued since his said disappearance, which inquiry has been made by the appellee, by her many friends, by relatives of the said James W. Robinson, by the sheriff of Dallas county, the chief of detectives of said county, and many other persons. James W. Robinson at the time of his disappearance was 47 years old, a man of exemplary habits, contented and respected, residing with his wife and family at their home in Oak Cliff in the city of Dallas, Tex., his family consisting of the appellee, his wife, and of two children, William, a boy then six years old, and Edmond, a boy then four years old. The said James W. Robinson was a most devoted husband and father and exceedingly happy in his domestic and family relations, sober in his habits, contented and respected among his friends and in the community, and there was no incentive for his disappearing from his home and family and absenting himself therefrom. The said James W. Robinson is dead. He died on or about the time of his said disappearance and prior to June 1, 1913, and while said insurance policy was in full force. The appellant is a fraternal beneficiary association, as defined by title 71, c. 7, of the Revised Statutes of Texas of 1911, and chapter 113 of the Regular Session Laws of 1913, and is doing business in all states of the Union, including Texas, and has a permit to do business in Texas. The benefit certificate was issued to the said James W. Robinson upon his written application to the appellant therefor, which application became and is a part of said insurance contract. In said application Robinson agreed that:

"All the provisions of the constitution and laws of the order now in force or that may hereafter be adopted shall constitute the basis for and form a part of any beneficiary certificate that may be issued to me by the Sovereign Camp of the Woodmen of the World, whether printed or referred to therein or not."

He further consented and agreed in said application that if he failed to comply with the laws, rules, and usages of the order, then in force or thereafter adopted, his beneficiary certificate should become void and all rights of any person or persons thereunder should be forfeited. The said James W. Robinson was 41 years of age at the time he became a member of the appellant order, and, by the terms of the appellant's said laws, was required to pay $3.75 monthly rate of assessment under said policy on the 1st day of each and every month. The payments under said policy were all made continuously and regularly up to and including May, 1913, after which time no payments whatsoever were made under or upon said policy. Said payments were made by said James W. Robinson up to the time of his disappearance, and thereafter first for a

time by the appellee and then said local camp at Grand Prairie. By the terms of said insurance contract, same became ipso facto null and void on and after June 1st for nonpayment of assessments provided the said James W. Robinson was then living. In May, 1907, the Sovereign Camp of the appellant, being its supreme legislative and governing body, enacted a by-law reading as follows:

"The absence or disappearance of a member from his last known place of residence for any length of time shall not be sufficient evidence of the death of such member, and no right shall accrue under his certificate of membership to a beneficiary or beneficiaries, nor shall any benefits be paid until proof has been made of the death of the member while in good standing."

This by-law was continued in force and re-enacted by the Sovereign Camp at its eighth biennial session regularly convened in June, 1909, and the Sovereign Camp in June, 1911, at its ninth biennial session, amended the disappearance by-law, and as so amended it was re-enacted and adopted in words as follows:

"The absence or disappearance of the member herein named, whether admitted heretofore or hereafter, from his last known place of residence and unheard of shall not be regarded as any evidence of the death of such member nor give or create any right to recover any benefits on any certificate or certificates issued to such member, or on account of such membership, in the absence of proof of his actual death, aside from and unassisted by any presumption arising by reason of such absence or disappearance, until the full term of his life expectancy at his age of entry, according to the Carlyle table of life expectancy, has expired, and then only in case all assessments, dues, special assessments and all other sums now or hereafter required under the laws of the order be paid on behalf of such member within the time required until the expiration of the term of such life expectancy, and the conditions of this certificate shall operate and be construed as a waiver of any statute of any state or country and of any rule of the common law of any state or any country to the contrary."

In September, 1912, at the time of said Robinson's disappearance, he being then 47 years of age, the term of his life expectancy at that time, according to said Carlyle Table of Mortality, was 22.7 years. After September 14, 1912, and prior to the filing of this suit on June 4, 1914, the defendant was notified of the fact of said James W. Robinson having disappeared, and of the fact that plaintiff claimed that said James W. Robinson was dead, and that demand was made by plaintiff for the payment of said benefit certificate, which claim was refused by the defendant; it denying liability thereon. The benefit certificate on its face provided as follows:

"This certificate is issued and accepted subject to all of the conditions on the back hereof, and subject to all of the laws, rules and regulations of this fraternity now in force or that may hereafter be enacted, and shall be null and void if said Sovereign does not comply with all of said conditions and with all of the laws, rules and regulations of the Sovereign Camp of the Woodmen of the World, that are now in

force or which may hereafter be enacted, and with the by-laws of the camp of which he is a member."

James W. Robinson, on June 14, 1906, accepted the certificate by signing a document, which was attached to appellant's answer as "Exhibit B." (It is unnecessary to copy this document.) The appellant denied that James W. Robinson was dead, and pleaded specially the by-laws above set out to the effect that the absence or disappearance of a member of appellant's order, whether admitted before or after their passage, from his last known place of residence and unheard of, should not be regarded as any evidence of the death of such member, etc., until the full term of his life expectancy at his age of entry according to the Carlyle Table of Expectancy had expired.

The trial court concluded as a matter of law that the contract of insurance between the appellant and James W. Robinson was not subject to the "disappearance by-law" pleaded by appellant, and the correctness of this conclusion is challenged in the appellant's first assignment of error.

[1, 2] As has been observed, James W. Robinson was admitted to membership in appellant's order upon his written application in which he agreed that all the provisions of the constitution and by-laws of the order then in force, or that might thereafter be adopted, should constitute the basis for and form a part of any beneficiary certificate issued to him, and that said certificate was accepted subject to all of the laws, rules, and regulations of the appellant then in force or that might thereafter be enacted, and should become null and void if he did not comply with such laws, rules, and regulations. These provisions of the contract sued on give rise to the first question presented and discussed by counsel, namely, whether or not the disappearance by-law, which was admittedly passed after Robinson became a member of the order, constituted such a material change in said contract as not to be binding on the said Robinson or his beneficiary. The contention of the appellee is that, whatever may be the rule in other jurisdictions, the stipulation that the insured will be bound by future by-laws passed by the appellant cannot, under the settled law of this state, affect the terms of the contract as it existed at the time it was made, and that such is the effect of the by-law in question. In support of this contention, appellee cites Supreme Lodge K. P. v. Mims, 167 S. W. 835, and Ericson v. Sup. Ruling, Frat. Mystic Circle, 105 Tex. 170, 146 S. W. 160. On the other hand, the appellant contends that, while it may be true that retroactive legislation cannot be invoked to divest vested rights of property or to impair the rights and obligations of contracts, yet the disappearance by-law under consideration, which was adopted by the appellant the year after James W. Robinson received his benefit, does not impair any vested

contract right, but merely establishes a rule of evidence, and the contract for benefits or of insurance is subject thereto. In the cases of Mims and Ericson, supra, it was held that the provision in the policy by which the insured agreed to comply with future rules and by-laws adopted by the order had reference only to such regulations as related to the insured's duties and conduct as a member and did not embrace an act that would produce a radical change in his rights; that the by-law invoked had the latter effect and was not binding. Those cases are probably not in point here. We regard it as a well-established general rule that no person has a vested right in rules of evidence, and that such rules may be changed by the state, if its action relates only to evidence, without violating the contract clause of the constitution. This is for the reason, as said by Mr. Cooley in his work on Constitutional Limitations (7th Ed.) 524, that:

"The rules of evidence pertain to the remedies which the state provides for its citizens, and generally in legal contemplation neither enter into and constitute any part of any contract nor can be regarded as being the essence of any right which a party may seek to enforce."

But however well established this general rule may be, and no matter how often it may have been applied in adjudicated cases, still we think it is not applicable and controlling in solving the question we are considering in the instant case. This is true, even if it be conceded that the law invoked by the appellant merely establishes a rule of evidence, because the by-law is unreasonable and contravenes article 5707 of our statute, which provides that:

"Any person absenting himself beyond sea or elsewhere for seven years successively shall be presumed to be dead, in any cause wherein his death may come in question, unless proof be made that he was alive within that time."

It has been held in this state and in other jurisdictions that a by-law of a fraternal order similar to the one involved in this case is inapplicable to an action on the certificate based on the member's death because he has not been heard from for seven years after his disappearance from his home, when such by-law renders ineffectual a statute providing that a person disappearing and unheard of for seven years shall be presumed to be dead. Supreme Ruling of Fraternal Mystic Circle v. Hoskins, 171 S. W. 812; Samberg v. Knights of the Modern Maccabees, 158 Mich. 568, 123 N. W. 25, 133 Am. St. Rep. 396. The fact that seven years had not elapsed from the time of the disappearance of the insured Robinson to the time of the institution of this suit or the cessation of the payment of dues should not, in our opinion, alter the case. The by-law under consideration is clearly opposed to the statute of this state referred to above in relation to the presumption arising from seven years' absence without intelligence concerning the absent person and one the appellant could not lawfully

make. It was therefore invalid, or without binding force, from the date of its enactment and could not be invoked in this case to render ineffective evidence that otherwise might be sufficient to establish the death of the insured.

[3, 4] Furthermore, the by-law could not be invoked by appellant for the purpose stated because it is unreasonable. Its enforcement would not only have the effect to render nugatory a salutary statute, but the further effect of "making it practically impossible to make proofs of death in cases within the occasional experiences of men." Samberg v. Knights of the Modern Maccabees, supra. In that case the by-law was held to be unreasonable. The following quoted language from appellee's brief aptly expresses our views upon the subject:

"In the light of existing authority, it may be said that a stipulation, in a contract that certain evidence only shall be admissible in case of litigation subsequently arising under such contract, cannot be allowed to control the action of the court in the admission of, or in the effect to be given to, evidence. Courts will not permit the course of justice, upon trials before them, to be stipulated and contracted in such manner as to defeat the ends to be subserved by such trials. The parties to the contract cannot agree to oust courts of jurisdiction over such contracts." Utter v. Travelers' Ins. Co., 65 Mich. 545, 32 N. W. 812, 8 Am. St. Rep. 913; Travelers' Ins. Co. v. McConkey, 127 U. S. 661, 8 Sup. Ct. 1360, 32 L. Ed. 308.

Such would be, practically, the effect of the enforcement of the by-law pleaded in this case by the appellant as a part of the contract sued on. In Wineland v. Knights of Maccabees of the World, 148 Mich. 608, 112 N. W. 696, it is held, in effect, that a by-law to be valid must be reasonable.

[5-7] The appellant further contends that the appellee failed to prove her case, for the evidence was wholly insufficient to establish the fact of Robinson's death, and that death occurred prior to June 1, 1913, when he was suspended from the order for nonpayment of dues and assessments and his beneficiary certificate was forfeited. We do not concur in appellant's view of the evidence as expressed in this contention. The law or rule of evidence that, when a person has not been heard of for a number of years, the presumption of duration of life ceases at the end of seven years, does not limit "the presumption of death to an absence of the person whose existence in life is in question without tidings from him for the space of seven years"; nor does the modification of the rule as laid down in some cases, to the effect that such absence for a shorter period, if the person is shown to have been in peril, will raise a presumption of death, exclude evidence of other facts and circumstances which tend to establish the probability of his death.

"Evidence of character, habits, domestic relations, and the like, making the abandonment of home and family improbable, and showing a want of all those motives which can be supposed to influence men to such acts, may be sufficient to raise the presumption of death, or from which the death of one absent and unheard from may be inferred, without regard to the duration of such absence."

This is the holding of the Supreme Court of Iowa in the case of Tisdale v. Connecticut Mutual Life Ins. Co., 26 Iowa, 170, 96 Am. Dec. 136, and meets with the approval of this court. In that case the court asks the question, "must seven years pass, or must it be shown that he (the absent person) was last seen or heard of in peril, before his death can be presumed?" and, answering the question in the negative, said:

"No greater wrong could be done to the character of the man than to account for his absence, even after the lapse of a few short months, upon the ground of a wanton abandonment of his family and friends. He could have lived a good and useful life to but little purpose, if those who knew him could even entertain such a suspicion."

The court then proceeds to remark that evidence of the character we have mentioned raises a presumption of death, for the reason that:

"Absence from any other cause, being without motive and inconsistent with the very nature of the person, is improbable."

There is much authority to the effect that, where one has been absent and unheard of for seven years, the presumption arises that he is then dead, but not that he died at any particular time theretofore, and that whoever finds it important to establish death at any particular period must do so by some kind of evidence. The evidence, however, need not be direct or positive; it may be circumstantial according to many of the adjudicated cases. Notably among such cases are those decided by the appellate courts of Missouri. Those courts have adopted the doctrine of Tisdale v. Insurance Co., supra, and hold with the Supreme Court of Iowa that the court or jury might, in a proper case, infer the death of the absent person had occurred before seven years had expired, even though he was not exposed to some peril which would be apt to shorten his life, and that the conclusion of death at an earlier period could be drawn upon proof of any facts which, according to common experience, made it probable the party, if alive, would have communicated with his friends. Bradley v. Modern Woodmen of America, 146 Mo. App. 428, 124 S. W. 69; Johnson v. Sovereign Camp Woodmen of the World, 163 Mo. App. 728, 147 S. W. 510; Springmeyer v. Sovereign Camp W. of W., 144 Mo. App. 483, 129 S. W. 272. In those cases it devolved upon the plaintiff to show that the insured died before the policy was forfeited for nonpayment of dues, and, upon evidence of no greater probative force than the evidence adduced upon the trial of the instant case, it was held a recovery might be had.

[8] The case as made for the appellee is fairly reflected in the court's conclusions of fact stated in a former part of this opinion,

and it becomes unnecessary to detail the evidence upon which those conclusions are based. It is sufficient to say that the evidence supports the court's findings of fact, and that the facts found to exist justified the conclusion that James W. Robinson was dead, and that he died at or about the time of his disappearance.

The record disclosing no reversible error, the judgment of the court below will be affirmed.

Affirmed.

⊂⟶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Application for writ of error pending in Supreme Court.