## SOVEREIGN CAMP, W. O. W., v. DE MARTINEZ.

### No. 9897.

Court of Civil Appeals of Texas. San Antonio.

March 24, 1937.

Rehearing Denied April 21, 1937.

L. D. Stroud and Wade & Wade, all of Beeville, for appellee.

SLATTON, Justice.

Jesusa R. de Martinez sued the Sovereign Camp of the Woodmen of the World in the district court of Bee county to recover as beneficiary on a certificate of insurance for $1,000, with double indemnity, issued on the life of Rosendo Martinez. The jury answered special issues upon which judgment was entered by the trial court against the association for $3,036.65, including insurance, double indemnity, penalty, interest, and attorney's fees.

Appellee alleged the death of Rosendo Martinez, on the 11th day of November, 1932, was caused, directly and independently of all other causes, from bodily injury effected solely through external, violent, and accidental means, occurring within sixty days after sustaining the injury, and such other facts necessary to a recovery of all the relief granted by the trial court.

The appellant answered by general demurrer, special exceptions, and a general denial, specially pleading that the insured committed suicide and died in consequence of his violation of the game laws of the state of Texas.

It may be stated that the insured, on the morning of the 11th day of November, 1932, with others, went to a ranch hunting, and on said morning the insured killed a deer. In the afternoon, the insured, with others, went to the ranch and some one other than the insured in the party shot at a deer, and the insured left the party, and after being gone about five minutes a voice was heard crying "Halt!" A voice resembling that of the insured, Rosendo Martinez, was heard to say: "Stay away from me." Immediately two shots were fired in rapid succession. Shortly thereafter outcries were heard coming from a voice resembling that of the insured as if in pain. About thirty minutes thereafter another shot was fired. The insured's companions remained in the pasture until after dark, at which time they left. On the following day the body of the insured was examined by an undertaker, who testified that there were two wounds in the body of insured, being gunshots, one of them having entered through the fleshy section of the body and passing through the liver, and the other entering from the back of the head, leaving the head in the front, carrying with it the right eye, and that there were no

Keys & Holt and Jesse M. Davis, all of Corpus Christi, for appellant.

powder burns on the body of the deceased insured.

The first proposition urged by the appellant is, in effect, that the answer of the jury to special issue No. 8 is contrary to the testimony and is unsupported thereby. Special issue No. 8 submitted to the jury the question whether, at the time insured was killed, he was violating the game laws, and to which the jury answered in the negative.

The constitution of the association, as well as the insurance certificate, provides, among other things, that should a member die, whether sane or insane, in consequence of the violation of the laws of the state, etc., the certificate would become null and void. Assuming that at the time insured was killed he was violating the state game law, unless his death was in consequence of such violation, it would not be a defense to this action. It would serve no useful purpose to discuss the evidence here. It is enough to say that under the evidence reasonable minds could differ as to whether insured, at the moment he was killed, was or was not violating the game laws of Texas. This being true, it follows that the first proposition should be and is overruled.

The association next complained that the evidence is insufficient to support the jury's finding that the insured had paid all dues and assessments due the association. Manuel Pena testified on this point to the effect that he attended the financial business of the local camp to which the insured belonged, and all dues and assessments were paid by insured to him, and such dues were transmitted to the association. It is true that the witness on cross-examination made some statements which apparently are in conflict with his statements on direct examination. However, it is the jury's province to reconcile such conflicts, which they did in favor of appellee.

The third proposition urged by the association is as follows, to wit: "The Court erred in refusing to grant defendant's Requested Charge No. 1, as follows: 'You are instructed that no liability rests upon the defendant Association under and by virtue of the accidental or double indemnity provisions of the certificate sued on because there being no eye-witness to the occurrence resulting in the death of the insured, there was no liability under the double indemnity clause of the policy.' Accordingly, the judgment of the court should be reversed as to allowance of double in-

demnity, and to that extent rendered for defendant."

In its statement following this proposition, it really complains of the fact that no eyewitness to the shooting testified on the trial of this case. We think the proposition does not present that question. However, if we are in error as to the efficiency of its proposition, we shall now pass upon the matter raised by its statement and argument following such proposition.

The double indemnity rider provides that "The Association will pay $2,000.00, less any indebtedness to the Association thereon, in lieu of the face amount of said certificate, upon receipt of due proof that the death of the member resulted, directly and indirectly of all other causes, from bodily injury effected solely through external, violent and accidental means, and within sixty days after sustaining such injury. This double indemnity benefit shall not apply if the member's death resulted from self-destruction, whether sane or insane, from any violation of the law by the member, from military or naval service in time of war, from riot, insurrection or war, or any act incident thereto, from engaging as a passenger or otherwise in submarine or aeronautic operation, from participating in professional automobile racing, from physical or mental infirmity, or directly or indirectly from illness or disease of any kind."

The certificate provides in effect that the member shall be bound by the constitution and by-laws and any amendment thereto of the association and made a part of the insurance contract. The tenth section of the by-laws of the association provides as follows: "The Association shall not be liable for the payment of double indemnity under any beneficiary certificate providing for double indemnity in case of the death of the member by accident, where it is claimed that death resulted from accidental drowning, cutting, poisoning, hanging, discharge of firearms or shooting, unless the fact that such drowning, cutting, poisoning, hanging, discharge of firearms or shooting was accidental shall be established by the testimony of at least one person other than the member, who was an eye-witness to such drowning, cutting, poisoning, hanging, discharge of firearms or shooting."

The association contends that this section of its by-laws is a general excepted risk, and, the insured having been killed by gunshot wounds, and the beneficiary not

having presented a witness on the trial who was an eyewitness to prove the gunshot wound was accidentally inflicted, there can be no recovery on double indemnity, citing Southern Travelers' Association v. Shattuck (Tex.Civ.App.) 2 S.W.(2d) 568; Bankers' Health & Accident Association v. Wilkes (Tex.Civ.App.) 209 S.W. 230; and many out-state authorities which are annotated in 62 A.L.R. 39.

The appellee makes the contention that, the association having pleaded as its defense that the insured committed suicide and was killed in consequence of violating the game laws of Texas, under the pleadings and the evidence in this case the quoted section of the by-laws has no application here. In other words, that the pleadings and the evidence in this cause do not require the proof by an eyewitness that the insured's death was occasioned by accidental means.

There is some merit to the argument of the appellee that the quoted section of the by-laws seems to have intended to apply to gunshot wounds accidentally inflicted, as distinguished from gunshot wounds self-inflicted. If this be its true meaning and import, the witness, B. C. Wildenberg, who was called by the association and testified that the witness, with two others and the insured, were hunting deer, that Rosendo Martinez left the other members of the party, and, after traveling about 100 yards, was lost from sight because of brush, and within about five minutes from the time he last saw the insured he heard voices and two shots, as hereinabove detailed. If the quoted provision is susceptible of that construction, that witness clearly shows that the gunshot wounds were not self-inflicted, and such witness would be an eyewitness within the intent and meaning of such quoted provision.

A careful reading of the double indemnity rider with its general excepted risks on the face thereof, together with the quoted provision, leads us to the conclusion that the quoted by-law is not an excepted risk at all but a rule of evidence. The provision does not classify accidental deaths that will or will not be compensable, as did the provision in Southern Traveler's Association v. Shattuck, supra, but only provides payment for accidental deaths which may be established by one eyewitness other than the member. There may be an accidental death where there are twenty eyewitnesses under the quoted provision, but, if one of the number is not presented on the trial, no compensation is allowed. In the case at bar there was an eyewitness. Is the beneficiary to be denied recovery because that eyewitness does not testify on the trial? Assume the insured was assassinated by a party for the purpose of robbery. Can it be said that the beneficiary could be expected to procure the testimony of the murderer and robber? Would any one contend that such witness would be available? Who would be willing to call a murderer and a robber on a trial and vouch for his testimony and his truth and veracity? If the provision had classified accidental deaths with an eyewitness other than insured, and accidental deaths without an eyewitness other than the insured, providing for the payment for the former, and denying payment for the latter, it would clearly come within the rule as announced in the Shattuck Case, supra, and we would be compelled to follow it. It seems clear to us that by the quoted by-law provision the association says: "We are dissatisfied with the rule of evidence which allows accidental injury to be proven by circumstantial evidence, notwithstanding the fact that it has been recognized as a just and salutary rule through the ages. Unless you are able to establish your case by one eye-witness testifying on the trial other than the member, there will be no liability."

Our statute, article 3713, provides: "The common law of England as practiced and understood shall, in its application to evidence, be followed and practiced by the courts of this State, so far as the same may not be inconsistent with this title or any other law."

We need cite no authority to demonstrate that under the common law of England a case could be made on circumstantial evidence which would be sufficient to sustain an action for accidental injury by gunshot wounds, and of course it is not contended that we have any statute in Texas changing the common-law rule. Therefore it follows that the quoted provision of the by-laws of the association offends against this statute. Likewise we believe that it is an unreasonable by-law.

We are not here dealing with a case involving a by-law of an association incorporated in another state, in which the provision has been construed by the court of last resort of that state, which asks us to follow the same, such as Modern Woodmen of America v. Mixer, 267 U.S. 544, 45 S.Ct. 389, 69 L.Ed. 783, 41 A.L.R. 1384. There is

no pleading and no evidence of any such in the case at bar. We have not been cited to any case and have not been able to find one wherein the Supreme Court of Nebraska, the state in which this association was incorporated, passed upon or construed the quoted provision of the by-laws. Our conclusion here has support by analogy by the Supreme Court of Nebraska in the case of Garrison v. Modern Woodmen of America, 105 Neb. 25, 178 N.W. 842.

Our conclusion is further supported by analogy in the cases of Supreme Ruling of Mystic Circle v. Hoskins (Tex.Civ.App.) 171 S.W. 812; Sovereign Camp of Woodmen of the World v. Robinson (Tex.Civ. App.) 187 S.W. 215; Bankers' Health & Accident Association v. Wilkes (Tex.Civ. App.) 209 S.W. 230. Other cases may be found wherein the parties attempt to contract with reference to the statutory law of limitation. We think it is clear that our Legislature, by the enactment of the above-quoted statute, placed it beyond the realm of contract of this association to change our rule of evidence.

Appellant, by its fourth proposition, complains of the refusal by the trial court to give its specially requested issue as follows, to wit: "Do you find from a preponderance of the evidence that the deceased, Rosendo Martinez, was killed as a consequence of an attempted assault upon D. R. Murchison? Answer Yes or No."

We think that it is one thing to object to a refusal by the trial court to give a specially requested issue, and it is another and different thing to object to the failure of the trial court to correctly charge on an omitted issue. There must be a pleading to support an issue. Here the association did not plead that the insured had attempted to assault any one. It did not plead any attempted assault upon D. R. Murchison. Likewise, there was no evidence offered that would raise the issue of an attempted assault on any one by the deceased insured. Nor was there any proof that D. R. Murchison was at or near the deceased at the time of his demise. It follows, therefore, that this proposition is without merit and should be overruled.

Accordingly, from what has been said, there is no reversible error shown by the record, and the judgment of the trial court will be in all things affirmed.

SMITH, C. J., disqualified, not sitting.