SUPREME LODGE, KNIGHTS OF PYTHIAS v. WILSON. (No. 8842.)

(Court of Civil Appeals of Texas. Ft. Worth. April 26, 1918.)

1. INSURANCE &approx;693 — FRATERNAL INSURANCE—BY-LAWS.

Act Cong. June 29, 1894, c. 119, § 4, provides that Knights of Pythias shall have power to amend their constitution, provided they do not conflict with laws of United States, or any state. Vernon's Sayles' Ann. Civ. St. 1914, art. 5707, provides that any person absent for seven years shall be presumed to be dead. *Held,* that a by-law, to the effect that disappearance shall not be regarded as evidence of death until full term of life expectancy of assured has expired, cannot be given effect.

2. INSURANCE &approx;719(1)—FRATERNAL INSURANCE—BY-LAWS—REASONABLENESS.

Fraternal insurance company's by-law that absence for seven years shall not be evidence of death until full term of life expectancy of insured has expired was unreasonable as to a policy already existing.

3. INSURANCE &approx;719(1)—FRATERNAL INSURANCE—BY-LAWS—REASONABLENESS.

A by-law of a fraternal insurance company that no recovery could be had upon any certificate of insured absent seven years until after the expiration of life expectancy was unreasonable as to an existing certificate.

4. INSURANCE &approx;146(3)—CONTRACT OF INSURANCE—CONSTRUCTION.

Insurance policy, ambiguous in its terms, will be construed most strongly in favor of insured.

5. INSURANCE &approx;805(1) — FRATERNAL INSURANCE—TIME FOR PROOF.

A by-law of a fraternal insurance company, providing that no action can be brought on a policy unless proof of death be furnished within one year, nor unless action is commenced within two years, does not apply, where plaintiff must rely upon Vernon's Sayles' Ann. Civ. St. 1914, art. 5707, relating to presumption of death, to establish death.

6. INSURANCE &approx;789(1)—PROOF OF DEATH—NECESSITY FOR MAKING.

Where holder of certificate of fraternal insurance, relying on presumption arising from seven years' absence of insured, waited seven years before attempting to prove death, action of insurer, in refusing payment by reason of by-laws concerning proof of death of absentees, was of itself sufficient to justify finding that it would have been useless to attempt to furnish proof of death under a by-law requiring proof to be made within a year.

7. INSURANCE &approx;812 — FRATERNAL INSURANCE—LIMITATIONS.

Under fraternal insurance certificate payable only "upon satisfactory proof of death," where it was impossible to establish death until after expiration of seven-year period creating presumption of death under Vernon's Sayles' Ann. Civ. St. 1914, art. 5707, cause of action on policy did not accrue until then.

Appeal from District Court, Tarrant County; Bruce Young, Judge.

Action by Mollie Wilson against the Supreme Lodge, Knights of Pythias. Judgment for plaintiff, and defendant appeals. Affirmed.

Crane & Crane, of Dallas, and H. P. Brown, of Cleburne, for appellant. Flournoy, Smith & Storer, of Ft. Worth, for appellee.

DUNKLIN, J. The Supreme Lodge, Knights of Pythias, a private corporation chartered by act of Congress has prosecuted this appeal from a judgment rendered against it in the district court of Tarrant county in favor of Mollie Wilson, plaintiff, upon an insurance policy in her favor issued by the defendant upon the life of Charles Edward Wilson, husband of the plaintiff. The trial was before the court without the aid of a jury, and the trial judge filed findings of fact and conclusions of law which show the material facts and issues of law arising thereon, and which are as follows:

"Findings of Fact.

"1. The defendant, Supreme Lodge Knights of Pythias, is an incorporated fraternal beneficiary association, incorporated under the laws of the United States, which conducts and for many years has conducted an insurance department wherein it insures the lives of its members.

"2. On June 2, 1906, Charles Edward Wilson, being a member in good standing of the order of Knights of Pythias, made written application to defendant for $1,000 of insurance on his life in favor of plaintiff, Mollie Wilson, his wife, which application, among other things, contained the following clause: 'It is agreed that no action at law or in equity shall be brought or maintained on any cause or claim arising out of any membership in the Endowment Rank, Knights of Pythias, or on any certificate issued upon this application, unless good and sufficient proof of death is furnished the Board of Control of the Endowment Rank within one year from date of the death of the member, nor shall such action at law be maintained unless suit is commenced within two years from the date of the death of the member.' 'In addition to the above provisions, I hereby agree that I will be governed, and this contract shall be controlled, by the laws, rules and regulations enacted by the Supreme Lodge, Knights of Pythias, and the rules and regulations which may be adopted by the Board of Control of the Endowment Rank governing said rank, now in force or that may hereafter from time to time be enacted by said Supreme Lodge or Board of Control, or submit to the penalties therein contained.'

"3. On June 14, 1906, the defendant, Supreme Lodge, Knights of Pythias, duly executed and issued, upon the above-mentioned application, a policy of insurance, in writing, otherwise called certificate of membership, which was duly delivered to and accepted by said Charles Edward Wilson on the 16th day of June, 1906, wherein and whereby the defendant insured the life of the said Charles Edward Wilson in the sum of $1,000 in favor of the plaintiff as beneficiary, promising in said policy to pay to plaintiff, Mollie Wilson, wife of the said Charles Edward Wilson, the sum of $1,000 upon due notice of and satisfactory proof of death, and good standing in the Endowment Rank of said order at the time of the death, of the insured.

"I find that the policy contains no provision as to when the proof of death should be made, but it provides that the application for the in-surance is on file with defendant's Board of Control, and is made a part of the contract. I also find that the application is copied in full on the back of the certificate, but that such copy is not referred to in the policy itself.

"4. All payments of every kind required to keep said insurance in good standing and in full force were kept up until February, 1909, when the said certificate was forfeited for nonpayment of dues. That payments from May, 1908, to February, 1909, were made by plaintiff.

"5. I find that in 1907 the insured, Charles Edward Wilson, left his home in Ft. Worth, Tex., for the republic of Mexico for the purpose of obtaining work there, he being unable to obtain work at his home. He went to Nacozari, in the state of Sinaloa, Mexico, and secured employment as section foreman on a railroad there, and so informed his wife, who remained at home, sending her the name and address of the foreman over him. He continued in said employment for several months, sending his wife, the plaintiff, each month a large portion of his salary. The first month he sent her $75, the amount varying, but never less than $50. The insured and his wife had bought a home in Ft. Worth, and were paying it out on the installment plan. These remittances to his wife were made regularly and promptly until and including April, 1908, when plaintiff received her last remittance, which was $50 together with a letter written by the insured, in which he stated that he would come home immediately after the pay day in May, 1908. Up to this time plaintiff had received letters regularly from her husband. In April, after receiving the last above remittance, plaintiff received a short note addressed to her, but not signed, in which the statement was made that he would be home in a few days. The letter was not in the handwriting of the insured, and closed with the words, 'Your husband until death,' which was not the usual way in which the insured closed his letters to his wife. Within a few days after receiving the last-mentioned note, and in April or May, 1908, plaintiff received from the express office in Ft. Worth the insured's grip, which she knew and recognized, properly addressed to her, and shipped from Mazatlan, state of Sinaloa, Mexico. The grip contained the insured's wearing apparel and other articles, including his razor and shaving mug, his purse, but with no money in it, and his private memorandum book in which was written in the insured's hand the following, among other things: 'To Whom It May Concern: My name is C. E. Wilson. If anything should happen to me, please notify my wife, 210 Addison Av. Valley View, Ft. Worth, Texas; or Ruby Lodge, K. of P., No. 93, Ft. Worth, Texas.'

"6. I find that the insured, Charles Edward Wilson, never did return home, and that his wife has never heard from him or of him since receiving the said grip or the letter containing the last above-mentioned remittance. I find that the plaintiff, after her husband failed to appear, wrote to the man who her husband informed her was his foreman at Mazatlan, and received a reply from him that he knew nothing of Wilson's whereabouts.

"I find that plaintiff made diligent inquiry to try to obtain information about her husband, but obtained no such information.

"7. I find that Charles Edward Wilson's family consisted of himself, his wife, who is the plaintiff, and an unmarried daughter of plaintiff by a former husband. I find that the relations between the insured and his wife and stepdaughter were at all times pleasant, that he loved his wife and stepdaughter, and that they loved him. I find that the insured was a man of good habits, industrious, a good provider for his family, reliable in his business dealings, and loved his home. When he left for Mexico he and plaintiff had been married about four years.

I find that there was no quarrel between plaintiff and the insured at the time he left home, but that he left solely because he could not get work at home.

"8. I find that the insured Charles Edward Wilson is dead.

"9. I find that the insured died before the forfeiture of the policy in question, and while the same was in full force and effect, and while he was in good standing in said Endowment Rank and in his subordinate lodge. I find that he died about April or May, 1908.

"10. I find that on October 24, 1906, the defendant duly enacted and adopted the following by-laws or statutes which have been continuously in force ever since their adoption:

" '495. The proof of death of a member shall, in all cases, be furnished by the beneficiary or beneficiaries on blank forms to be obtained of the board, and shall contain affidavits of the attending physician or physicians, the undertaker and clergyman who officiated at the funeral, the master of finance as to standing of deceased in the subordinate lodge at the time of death, and from such other person and persons as may be required; affidavits to be made before an officer authorized to take affidavits, and such authority must be certified to by the clerk of a court of record or other competent authority under seal. The board may require any other or additional documents or information in any case, and no proof of the death shall be deemed complete in any case until the board shall be fully satisfied with the documents filed, and in every case such proofs as may be required shall be furnished the board free of expense to it.

" '496. No action at law or equity shall be brought or maintained on any cause or claim arising out of any membership in the insurance department, or on any certificate of membership heretofore issued, or hereafter issued in said insurance department, unless good, sufficient, and satisfactory proof of death is furnished the board of control within one year from date of death of the member, nor shall such action at law be maintained unless suit is commenced within two years from the date of death of the member.

" '497. No lapse of time nor absence or disappearance on the part of any member of the insurance department without proof of the actual death of such member while in good standing, shall entitle his beneficiary to recover the amount of his certificate, except as hereinafter provided. The disappearance or long-continued absence of any member unheard of shall not be regarded as evidence of death nor give any right to recover on any benefit certificate issued in the insurance department until the full term of the member's expectancy, according to the American Experience Table of Mortality, has expired within the life of the certificate in question, and this statute shall be in full force and effect, any statute of any state or country or rule of the common law of any state or country to the contrary. The term "within the life of the certificate," as here used, is meant that the certificate has not lapsed nor forfeited, and that all payments and assessments required by the board under same have been paid.'

"11. I find that on August 24, 1916, plaintiff mailed to the defendant written proof of the death of the insured Charles Edward Wilson, which proof was received by the defendant on August 28, 1916. Said proof contained a statement of the circumstances of the absence of the insured, substantially as set forth in these findings of fact. It did not include the affidavit of any physician attending the insured in his last illness, or of the clergyman or undertaker who officiated at his funeral.

"12. Accompanying said proof was a letter to defendant by plaintiff's counsel, in which they stated that defendant would see from the proof that plaintiff relied mainly upon the seven years' continued absence of Charles Edward Wilson

from home without his having been heard from by his relatives or friends, and that under a statute of Texas such continued absence is proof of death, and referring defendant to the case of Sovereign Camp v. Robinson, 187 S. W. 215, where it was held that seven years' continued absence was sufficient proof of death upon which to collect life insurance, and where it was also held that a by-law similar to defendant's, to the effect that absence should not be proof of death, was held unreasonable and in violation of said statute.

"13. The only reply made by defendant to the said proof of death and the accompanying letter was the return of the United States registry receipt signed by defendant, acknowledging receipt of the package containing the proof. Receiving no reply to said proof and letter, plaintiff's attorneys again wrote to defendant on September 26, 1916, in which they suggested that probably defendant's failure to reply was because the proof was not made on the blanks usually used by defendant, and asking that such blanks be sent to plaintiff.

"I find that plaintiff's claim was then referred by defendant to their general counsel, who on October 7, 1916, wrote to plaintiff's counsel, assuring them that there was no disposition on the part of defendant to neglect the consideration of plaintiff's claim, said letter containing the following: 'It seems that the assured, Charles E. Wilson, disappeared from his home at Ft. Worth in 1907, to find work in Mexico. He returned a grip containing his clothes, and has not been heard from since. You suggest that under these circumstances, the Texas statute would apply and that our by-laws governing our members and their beneficiaries, would be involved. We would ask you, if not too much trouble, to furnish us with a copy of your statute. You may do this by furnishing it in typewriting if you desire. We will take the matter up at once and try to come to some conclusion as to the law of the matter. At our earliest convenience, we will give you our decision as to the merits of the matter.'

"I find that said letter was replied to by our plaintiff's counsel on October 11, 1916, by a letter which was duly received by defendant's general counsel, in which a copy of article 5707 (3372) Vernon's Sayles' Texas Civil Statutes of 1914, was contained. Said letter contained the following: 'We have your favor of the 7th inst. in regard to claim upon the certificate of Charles Edward Wilson, and we note that you desire that we furnish you with copy of the Texas statute as to presumption of death. The statute in question is article 5707 in vol. 4 of Vernon's Sayles' Texas Civil Statutes of 1914 and bears the same number of our Revised Statutes of 1911. The same statute existed in 1897 and is there article 3372. The wording is precisely the same now as then. It appears from note immediately following the article that it has been in our law since February 5, 1841. The statute is as follows.' Then follows the statute. The said letter also refers to the case of Sovereign Camp, Woodmen of the World, v. Robinson, 187 S. W. 215.

"I find that on November 6, 1916, defendant's general counsel wrote to plaintiff's attorneys a letter containing the following: 'We intended to answer your letter of October 11th before this time, but our senior counsel has been absent from the office trying to save his country by serving it in the United States Senate, and we have not as yet had the opportunity to give careful investigation to your statute, so kindly furnished to us by you and the decision of your Supreme Court, which we have. You will understand that our order is one that undertakes to treat all members exactly alike as near so as it is possible under the laws of the various states. If our supreme statute is involved under your law, it raises the question before our board whether the statute should be applied

to members in other states. We would therefore ask you to be a little patient about this matter until we can give the matter a thorough investigation and make our recommendation to the board, who, of course, have final say in matters of this kind. We do not see how this would prejudice you in any way, and we expressly disclaim any right that might accrue to us by virtue of the delay in looking the matter up.'

"And I find that on November 29, 1916, the defendant wrote to plaintiff's counsel as follows: 'In re Certificate of C. E. Wilson, Deceased. This is to advise that our Board of Control had a special meeting on November 25 last, at which time the above case was carefully considered and I was directed to advise that the board does not consider there is any liability whatever under the outstanding certificate. Very truly yours, W. O. Powers, General Secretary. WOP. zs'

"I find that the foregoing constituted all the correspondence or communication that passed between the plaintiff and the defendant, or the agents or attorneys of either of them, in reference to plaintiff's claim.

"14. I find that defendant never at any time made any objection to plaintiff's proof of death as not being made in the required time.

"15. I find that in view of defendant's by-law No. 497 set forth in these findings of fact, with reference to liability on certificates in case of absence of members, that it would have been a useless act for plaintiff to have furnished proof of death within the prescribed time in this case, for the reason that the claim would have been refused any way.

"16. I find that it was not possible for plaintiff, under the facts of this case, to have made the character of proof of death required by the defendant's by-law No. 495.

"17. I find that plaintiff had no knowledge of the existence of the by-law, requiring proof within one year of the insured's death, until the trial of this case.

### "Conclusions of Law.

"1. I conclude that defendant's by-law No. 497, to the effect that no lapse of time, or absence or disappearance of any member, without proof of actual death, until after the member's life expectancy has been attained, shall entitle his beneficiary to a recovery on his certificate, is unreasonable, as applied to the facts in this case, and in violation of article 5707, Vernon's Sayles' Tex. Civ. Stats. of 1914, and is void.

"2. I conclude that the insured, Charles Edward Wilson is dead, and that the defendant is liable to plaintiff, the beneficiary in his certificate, for $1,000, the amount of his certificate, with 6 per cent. interest thereon from date of demand for payment of same, which was August 28, 1916.

"3. I conclude that the plaintiff was not required to do a useless thing, since no proof of death plaintiff could make would have been accepted, and that therefore it was not necessary, under the facts in this case, for plaintiff to have furnished to defendant any proof of death at all.

"4. I conclude that plaintiff was not required to do an impossible thing, and since the proof of death required by defendant's by-laws was impossible, under the circumstances of this case, I conclude that it was not necessary for plaintiff to have furnished any proof of death at all.

"5. I conclude that the defendant waived all objections to the proof of death that was furnished, as to its not being made in the required time. Bruce Young, Judge of the District Court 48th Judicial District of Texas."

The defendant was granted a charter by Act Cong. June 29, 1894, c. 119, 28 Stat. 96, and section 4 of the act reads as follows:

"That said corporation shall have a constitution, and shall have the power to amend the same at pleasure; provided that such constitution or amendments thereof do not conflict with the laws of the United States or of any state."

In its answer to plaintiff's petition the defendant invoked the charter provision just quoted; also the three by-laws set out in the court's findings of fact numbered 495, 496, and 497; also the agreement of the insured contained in his application for insurance set out in the second paragraph of the court's findings of fact and the provision in the policy itself making said agreement so contained in the application a part of the contract of insurance as shown in the third paragraph of the court's findings of fact. Defendant also pleaded the statute of limitation of four years to plaintiff's suit.

Under the authority of Supreme Lodge Knights of Pythias v. Mims, 241 U. S. 574, 36 Sup. Ct. 702, 60 L. Ed. 1179, L. R. A. 1916F, 919, it cannot be doubted that, although the by-laws referred to were enacted subsequently to the issuance of the policy, they became a part of the contract of insurance; but whether or not they can be given the effect to defeat a recovery upon the policy is the vital question in this case. Vernon's Sayles' Tex. Civ. Stats. art. 5707, reads as follows:

"Any person absenting himself beyond sea or elsewhere for seven years successively shall be presumed to be dead, in any cause wherein his death may come in question, unless proof be made that he was alive within that time; but an estate recovered on such presumption, if in a subsequent action or suit the person presumed to be dead shall be proved to be living, shall be restored to him who shall have been evicted, and he may moreover demand and recover the rents and profits of the estate during such time as he shall be deprived thereof, with lawful interest."

[1, 2] We are of the opinion that appellant's by-law No. 497, to the effect that the disappearance of a person with no tidings of his whereabouts shall not be regarded as evidence of his death until the full term of the life expectancy of the insured has expired, when the life expectancy covers a period of time in excess of seven years is in conflict with article 5707 of our statutes, and cannot be given effect in this case, since the evidence conclusively shows that the contract of insurance was consummated in the state of Texas, and therefore is subject to the provisions of article 5707 of our statutes (Supreme Lodge, K. of P., v. Meyer, 198 U. S. 508, 25 Sup. Ct. 754, 49 L. Ed. 1146), and since under the terms of section 4 of the act of Congress granting appellant's charter quoted above, appellant was denied the authority to pass any by-law which would be in conflict with any state statute otherwise applicable in a suit upon a policy. And we hold, further, that as applied to the facts of this case the by-law was unreasonable, and for that additional reason, cannot be given effect. Sovereign Camp of Woodmen of the World v. Robinson, 187 S. W. 215; Supreme Ruling

Fraternal Mystic Circle v. Hoskins, 171 S. W. 812; Eaton v. International Travelers' Ass'n of Dallas, 136 S. W. 817.

[3, 4] With that portion of the by-law last referred to eliminated, the remainder, to the effect that no recovery can be had upon any certificate of insurance until after the expiration of the term of life expectancy of the insured, must give way also, because, first, of unreasonableness; and, second because of the fact that it would then be in conflict with other provisions of the policy, to the effect that the insurance provided for is payable "upon due notice and satisfactory proof of death and good standing in the rank at the time of death" of the insured; it being well settled that an insurance policy, ambiguous in its terms, will be construed most strongly in favor of the insured.

In briefs for appellant, counsel admit that appellant's by-law No. 495, shown in the court's findings, is not applicable in the present case, since it was impossible for plaintiff to furnish the proofs required by that article; it being admitted that as a matter of law it would be applicable only in such cases where it is possible for such proof of death of a member to be made.

[5] But it is insisted, further, that since the court found that the insured died in April or May, 1908, and the proof of his death was not furnished until more than eight years thereafter, plaintiff should have been denied a recovery by reason of the provisions of appellant's by-law No. 496 and the agreement contained in the application for the policy which is made a part of the contract of insurance, and is practically in the terms of the by-law, and the substance of which was that no action in law or in equity could be brought or maintained upon any policy of insurance unless satisfactory proof of the death of insured should be furnished to appellant within one year from the date of his death, nor unless such action is commenced within two years from that date. We think it sufficiently appears that without the presumption of death arising from the absence of insured for seven years under article 5707 of the statute, plaintiff was unable to establish the fact that the insured was dead. The purpose and intention of both parties to the insurance contract as shown upon its face was that the beneficiary should receive the insurance provided for in the event of death of the insured while he was in good standing, and as the by-law and the stipulation in the application for insurance, if given effect, obviously, would defeat that purpose even though the benefits contracted for had been justly earned, we are of the opinion that the provisions of the by-law now under discussion were unreasonable as applied to the facts of this case, and not intended by the parties to apply in such a case, not only the one requiring proof of death to be furnished within one year after death of the insured, but also the one requiring suit to be brought within two years after his death. It was impossible for plaintiff to comply with either of those requirements, and it is not reasonable to suppose that it was the intention of the parties to the contract of insurance that the same should be invalidated by a failure of the beneficiary to perform an impossible act after the insured had died while his policy was in full force and effect. A presumption to the contrary would obtain. McElroy v. John Hancock Mut., etc., 88 Md. 137, 41 Atl. 112, 71 Am. St. Rep. 400; Trippe v. Provident Fund Society, 140 N. Y. 23, 35 N. E. 316, 22 L. R. A. 432, 37 Am. St. Rep. 529; Munz v. Standard Life, 26 Utah, 69, 72 Pac. 182, 62 L. R. A. 485, 99 Am. St. Rep. 830; Insurance Co. v. Boykin, 12 Wall. 433, 20 L. Ed. 442. See, also, decisions cited in notes in 18 L. R. A. (N. S.) 109, 27 L. R. A. (N. S.) 319, and 41 L. R. A. (N. S.) 286. Besides by article 5714 of Vernon's Sayles' Tex. Civ. Stats. it is expressly provided that:

"No stipulation in any contract requiring notice to be given of any claim for damages as a condition precedent to the right to sue thereon, shall ever be valid, unless such stipulation is reasonable."

And in Ætna Ins. Co. v. Griffin, 58 Tex. Civ. App. 198, 123 S. W. 432, in which writ of error was refused, it was held that that statute is applicable in a case like this. In the absence of that by-law the only duty owing to defendant with respect to when she should furnish proof of death of the insured was that she should furnish "due notice" of his death, which could have no other meaning than that such proof should be furnished within a reasonable time. And no contention is made that, independent of the requirements of the by-law, plaintiff did not furnish such proof within a reasonable time after the same was possible, and that such delay in furnishing that proof resulted in any inconvenience or harm or was in any manner prejudicial to appellant in sustaining any defense urged to the suit. The evidence was sufficient to refute such a contention at all events.

[6] We are of the opinion, further, that the evidence was sufficient to support the court's finding that it would have been a useless act for plaintiff to have furnished such proof of death as was then available within the period of one year from the death of the insured, for the reason that the appellant would then have refused the payment of the policy. The subsequent action of appellant in refusing payment by reason of the provisions of its by-laws was of itself sufficient to justify that finding. Woodall v. Pac. Mut. Life Ins. Co., 79 S. W. 1090.

And the evidence was sufficient to support the further finding by the trial judge that, when appellant's claim was presented for payment prior to the institution of this suit, it waived any right it then had to object that the proof of death had not been furnished within the time required by the by-law re-

ferred to. Underwood v. Security Life & Annuity Co., 108 Tex. 381, 194 S. W. 585; Phœnix Ins. Co. v. Levy, 12 Tex. Civ. App. 45, 33 S. W. 992; Western Indemnity Co. v. Free & Accepted Masons, 198 S. W. 1099, by this court; Georgia Home v. Moriarty, 37 S. W. 628, writ of error refused; British America Ass'n Co. v. Francisco, 58 Tex. Civ. App. 75, 123 S. W. 1144, writ of error refused; Merchants' Ins. Co. v. Gibbs, 56 N. J. Law, 679, 29 Atl. 485, 44 Am. St. Rep. 413; Washburn v. Union Central Life Ins. Co., 143 Ala. 485, 38 South. 1011; McElroy v. John Hancock Mutual Life Ins. Co., 88 Md. 137, 41 Atl. 112, 71 Am. St. Rep. 400; Leob v. American Central Ins. Co., 99 Mo. 50, 12 S. W. 374; Trippe v. Provident Fund Society, 140 N. Y. 23, 35 N. E. 316, 22 L. R. A. 432, 37 Am. St. Rep. 529; Ramsey. v. Gen. Accident, etc., 160 Mo. App. 236, 142 S. W. 763; Douville v. Pacific Coast Casualty Co., 25 Idaho, 396, 138 Pac. 506, Ann. Cas. 1917A, 112.

[7] The policy stipulated that it was payable only upon "satisfactory proof of death," and, as it was impossible to establish the death of the insured until after the expiration of the seven-year period creating the presumption of death under and by virtue of article 5707 of our statutes, the cause of action did not accrue until then; and the by-law and contract, requiring suit to be instituted prior to that time, were, as applied to the facts of this case, unreasonable and void because in conflict with our statute of limitation of four years. As the suit was instituted within two years next after the expiration of the seven-year period of absence of the insured, it was not barred by the statute of limitation of four years. Dwelling House Ins. Co. v. Kansas Loan & Trust Co., 5 Kan. App. 137, 48 Pac. 891; Stout v. City Fire Ins. Co., 12 Iowa, 371, 79 Am. Dec. 539; Bloodgood v. Massachusetts Ben. Ass'n, 19 Misc. Rep. 460, 44 N. Y. Supp. 563; Hay v. Insurance Co., 77 N. Y. 235, 33 Am. Rep. 607; Benjamin v. District Grand Lodge, 171 Cal. 260, 152 Pac. 731; Linneweber v. Supreme Council, 30 Cal. App. 315, 158 Pac. 229; Behlmer v. Grand Lodge, 109 Minn. 305, 123 N. W. 1071, 26 L. R. A. (N. S.) 305; G., C. & S. F. Ry. v. Stanley, 89 Tex. 42, 33 S. W. 109.

For the reasons indicated, all assignments of error are overruled, and the judgment is affirmed.

Affirmed.

BUCK, J., did not sit in this case, being disqualified.